[Civ. No. 4494. Third Appellate District.—February 13, 1932.]

PATRICIA YATES, Respondent, v. ADOLPH R. MOROTTI et al., Appellants.

Langdon & Tope for Appellants.

Foltz, Rendon & Wallace and Carter, Peterson & McDonough for Respondent.

THOMPSON (R. L.), J.—The plaintiff recovered judgment for $4,000 damages for personal injuries sustained as a result of an automobile casualty. From this judgment the defendants have appealed.

The plaintiff is a professional nurse who resides in Oakland. On the night of February 16, 1929, in company with Edward Burns, she drove her Chrysler coupe automobile from Modesto to Stockton, where they arrived at midnight. California Street in Stockton extends north and south. It is fifty-five feet in width between the curbings and is paved. Anderson Street intersects California Street at a right angle. One block to the north and parallel with Anderson Street, Worth Street also intersects California Street. Mr. Burns

lived at No. 921, on the westerly side of California Street, midway between Anderson and Worth Streets. The night was clear and the street lamps were lighted. There were no other vehicles in sight along this street. The plaintiff had a clear vision up and down California Street for several blocks. Driving northerly along California Street she crossed diagonally to the opposite side thereof and parked her car close to the curb in front of the Burns residence. This left her machine headed northerly on the wrong side of the street. The motor was turned off. Leaving the head and tail lamps lighted, the plaintiff and Mr. Burns got out and going to the rear of the machine they opened the turtle-back door to remove the baggage.

The defendant Ralph Morotti was but twenty years of age. He held an operator's license to drive an automobile, which was obtained with the indorsement of his father, who is also a co-defendant against whom the judgment in this action was rendered. Just before midnight on the day of the accident Ralph Morotti drove a young lady to her home on Ophir Street in Stockton. He was using his father's Nash sedan automobile, with his consent. Returning southerly along California Street, after parting with the young lady, he picked up Dave Jackson, a friend, at Main Street. They then continued their course southerly along California Street at a rapid rate of speed. About three blocks northerly from the point where the plaintiff's car was parked, Morotti passed another car operated by R. F. Garwin, who was accompanied by Miss Helen Reynolds. The defendant Morotti was driving in a reckless and erratic manner and sideswiped the Garwin car in passing. Mr. Garwin testified in this regard: "I heard a (Morotti's) car coming. I could hear the noise. . . . (He was traveling) at about forty-five miles an hour. . . . I pulled over as far as possible to my side of the road and the oncoming car came over and sideswiped me when I was almost stopped and against the curb, . . . slightly damaging the rear fender. . . . I pulled my car to the curb and watched the other car go down the road. . . . It zigzagged from one side of the road to the other and continued at about the same speed. . . . I saw the car which had passed me strike the other (Yates') car. . . . (After the collision) the plaintiff's automobile which had been pushed south

and west (stood) so that the front wheels were about at the curb line and the back wheels were pushed into a picket fence. . . . The Morotti car was on the right side of the road facing south (thirty feet beyond the plaintiff's car) and about five or six feet from the right-hand curb. . . . I (went back and) saw Morotti slumped over the steering wheel in his car and apparently knocked out. The front of the Morotti car was caved in. . . . I went up to Morotti and his breath smelled of liquor and he appeared to be drunk.'' This testimony was substantially corroborated by Miss Reynolds. Two police officers, who took Morotti in charge, testified that he appeared to be intoxicated.

The plaintiff's car was evidently hit with terrific force and shoved over the curb and across the walk into a picket fence beyond the lawn. Her machine was badly wrecked. The front of the Morotti car was ''caved in''. Burns, who stood back of the plaintiff's car, was knocked senseless. Miss Yates was knocked down and run over. She sustained a double fracture of the pelvis, a severe cut upon the right temple, a slash across the right limb below the knee and numerous bruises and contusions on her back, sides and limbs. She was confined to a hospital for some time. Subsequently, neurotic oedema and thyroid glandular affection developed. She was afflicted with a general nervous disorder and a growth of goiter. Two thyroid operations were performed. There is a conflict of evidence regarding the source of these ailments. Substantial expert testimony sufficiently traces them as a result of the injuries sustained in the automobile accident.

The case was tried without a jury. Findings were adopted favorable to the plaintiff upon all the material issues. A judgment was accordingly rendered against both defendants. The plaintiff was awarded special damages in the sum of $1915.50 and general damages in the further sum of $2,084.50. From this judgment the defendants have appealed.

The appellants contend the findings and judgment are not supported by the evidence; that the driver of the Morotti car is exempt from liability because he was suddenly confronted with an emergency which will excuse him by the application of the doctrine of imminent peril from his mistake of judgment which resulted in the collision;

that the plaintiff was guilty of contributory negligence *per se* in parking her car on the wrong side of the street contrary to law and in violation of the provisions of a city ordinance which was in effect precluding her from recovering judgment in this case and that the court erred in its rulings upon the introduction of evidence.

There is no merit in the contention that the evidence· fails to support the findings of defendants' negligence. While there is a conflict of evidence upon the essential facts, the court was warranted in assuming from the record that Ralph Morotti was under the influence of intoxicating liquor at the time of the accident, and that he drove his car at an excessive rate of speed in a reckless and erratic manner, and that he had ample opportunity to avoid the accident. He was driving down a street nearly free from traffic. The street is fifty-five feet in width. He was driving in a zigzag course at thirty-five to forty-five miles an hour. He crossed on to the wrong side of the street and sideswiped the Garwin car which was traveling along the extreme easterly side of the pavement. The plaintiff's car was parked in plain view, on the extreme westerly side of the street, with the headlamps lighted. There was nothing to obstruct a view of this car. He had the entire remaining unobstructed portion of the fifty-five foot street in which to pass the plaintiff's car. His only excuse for colliding with the machine is that he supposed it was moving across his pathway and that it would drive away from the curbing to the opposite side of the street. He did say the lights of the Yates car were suddenly flashed on when he was some distance away. But both the plaintiff and Mr. Burns testified the lights were not turned off, but upon the contrary remained on. This conflict of evidence was resolved against the defendants. Moreover the defendant Ralph Morotti admitted that "I was seventy-five feet away from it when I first saw it was not moving". It may be assumed from this admission that he realized the car was parked against the curbing and was not likely to drive across his pathway, when he was still seventy-five feet away. This was ample space within which to turn the course of his car so as to avoid the parked vehicle. Evidently he neither slackened the speed of his car nor attempted to change its course. He crashed into the plaintiff's car with tremendous force. This

is evident from the damage which was done to both cars, and the fact that the Yates car was forced over the curbing across the walk and into the picket fence. Under such circumstances it may not be reasonably said the defendants were not guilty of negligence. Indeed such facts would warrant a finding of reckless driving of an automobile.

Under such circumstances it is equally unreasonable to hold that the defendants are exempt from liability for the negligent operation of their car by the driver thereof due to a mistake of judgment affecting his conduct when he was suddenly confronted with an alleged emergency. This doctrine does not apply to one who has muddled his mind by an excessive use of intoxicating liquor and while in such condition is guilty of wilful, wanton or reckless driving of an automobile which results in injury to another person or damage to his property. (20 R. C. L. 144, sec. 118.) It is apparent that one who intentionally or recklessly inflicts injuries upon another may not excuse that conduct or exempt himself from liability by asserting that he was not responsible for his lack of judgment on account of the imminent peril which confronted him, or that the injured party was technically guilty of contributory negligence in the violation of the rules of traffic. Under such circumstances the intentional or reckless nature of the wrongful acts of the tort-feasor render the mere violation of a traffic rule too remote and inconsequential to furnish a defense amounting to contributory negligence which will defeat the right to recover damages for the injuries thus sustained. It appears that the very conduct of the defendant Ralph Morotti may have been the cause which produced the perilous predicament in which he found himself.

The doctrine which may excuse one for a lack of sound judgment with respect to his conduct when he is suddenly confronted with imminent peril has no application to one who has brought the emergency upon himself by his own wilful, reckless or negligent conduct. The rule applies only to one who, *without fault on his own part*, finds himself suddenly confronted with imminent peril. (*Rush* v. *Lagomarsino*, 196 Cal. 308, 318 [237 Pac. 1066]; *Neff* v. *United Railroads*, 188 Cal. 722 [207 Pac. 243]; *Brooks* v. *City of Monterey*, 106 Cal. App. 649, 657 [290 Pac. 540]; *Gootar* v. *Levin*, 109 Cal. App. 703 [293 Pac. 706]; 3-4 Huddy's

Ency. of Auto Law, 9th ed., 348, sec. 182; 19 Cal. Jur. 602, sec. 38; 42 C. J. 891, sec. 592.) The doctrine of "imminent peril" is therefore no excuse for the accident.

A more serious problem is whether the plaintiff's violation of the law and the city ordinance by parking her car on the wrong side of the street constituted contributory negligence on her part which will preclude her from recovering damages for injuries which resulted from the accident. Ordinance number 661 of the city of Stockton was introduced in evidence. It provides in part:

"Sec. 28. It shall be unlawful for any person, riding, driving, propelling or in charge of any vehicle to stop the same or cause the same to be stopped with the left side of such vehicle toward, or along or next to the curb."

Without doubt the plaintiff violated this ordinance by parking on the wrong side of California Street with the left side of her machine adjacent to the curbing. The violation of an ordinance or motor vehicle law ordinarily constitutes negligence *per se,* which casts the burden upon one who is guilty thereof to show by a preponderance of the evidence that such violation of law did not proximately contribute to the accident. In the present case it seems quite clear the accident occurred entirely through the fault of the defendants and without the contribution of the plaintiff's negligence. It seems evident that even if the plaintiff's car had been headed the other way and that it was parked with the right side of her car against the westerly curbing, the defendants' car would have crashed into it just the same. We are unable to see how the contact of the plaintiff's left-hand side of her car with the curbing, contributed to the accident. Morotti claims that he was blinded and confused by the plaintiff's headlights. This does not seem reasonable. He should have seen them at a distance. He admits seeing them and realizing the car was stationary when he was seventy-five feet away. He then had ample opportunity to change the course of his machine and avoid the accident. The position of the plaintiff's car had nothing to do with Morotti's reckless, zigzag manner of driving, nor with his failure to exercise reasonable care in avoiding the parked car which he plainly saw. The accident might not have been avoided even if plaintiff's car had been parked on the opposite side of the street. Morotti seemed to be

making a clean sweep of the entire street. He zigzagged from one side to the other. He drove over on to the extreme easterly side of the street and hit Garwin's car, then he directed his course to the opposite side and crashed into the plaintiff's car. He seemed to usurp a monopoly of the entire street.

Under the circumstances of this case the plaintiff is not barred from recovering damages for the injuries received as a result of the defendant's negligence merely because she had parked her automobile on the wrong side of the street. She was standing behind her machine and was not aware of the imminent danger of a collision. She had taken the precaution to leave her headlamps lighted in order to warn approaching vehicles of the location of her car. ■ The defendants' car was being driven at a high rate of speed and in a reckless manner. The driver of the defendants' car actually saw the parked car and realized it was stationary when he was seventy-five feet away. There was no other traffic obstructing the street. He then had ample time, in the exercise of ordinary care, to avoid the accident. The doctrine of the last clear chance will therefore support the findings and judgment of the court. This doctrine applies when one is in imminent peril and notwithstanding the exercise of ordinary care is ignorant of the danger (*Hoy* v. *Tornich,* 199 Cal. 545, 553 [250 Pac. 565]), or, knowing of the danger, is unable to extricate himself, and upon the contrary, the one who is accused of the tort, is aware of the danger, and by the use of ordinary care, may avoid it, but fails to do so. (*Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359]; *Chappell* v. *San Diego & A. Ry. Co.,* 201 Cal. 560 [258 Pac. 73]; 3–4 Huddy's Ency. of Auto Law, 9th ed., 358, sec. 187; 19 Cal. Jur. 651, sec. 80.) The question of the presence of the elements necessary to invoke the doctrine of the last clear chance was a problem for the determination of the court.

■ Several rulings of the court upon the introduction of evidence are challenged as erroneous. The questions and answers, together with the formal objections of the appellants, are printed in the opening brief without assigning any specific reasons for the alleged prejudicial error. Under such circumstances an appellate court may not be expected to prosecute an independent investigation to discover error

which is not specifically assigned. (2 Cal. Jur. 727, sec. 419.) Rule VIII of the Rules for the Supreme Court and District Courts of Appeal provides in part that:

"The briefs must present each point separately, under an appropriate heading, showing the nature of the question to be presented."

■ It is claimed the defendants were unduly restricted in their cross-examination of witnesses since plaintiff claims damages for neurotic oedema and thyroid glandular ailment which resulted from the injuries which she received in the automobile accident. It is contended the defendants should have been "permitted to trace the steps of the plaintiff from the time of the injury up to the time of trial to determine what, if any, exercise she was able to take and what she had done, where she had been", and what work she was able to perform. It does not appear the defendants were unreasonably restricted in regard to this subject. The challenged rulings of the court come within the rule which gives a trial judge discretion to reasonably regulate the latitude within which the examination of a witness may be permitted. There was no abuse of this discretion.

■ The appellants charge the court with erroneously granting the motion to strike out the answer which the witness Ratelle gave to a question regarding the physical and mental condition of the defendant Ralph Morotti immediately following the accident. It is asserted this ruling was erroneous because there is a conflict regarding the question as to whether the driver of defendants' machine was then intoxicated. The following record is disclosed: "Q. Just tell us what your observations were of Mr. Morotti when you saw him? A. Well he was knocked out, he was hurt I guess. Mr. McDonough (attorney for plaintiff): Move that go out, he said he was hurt, *he guessed*. The Court: It may go out." This answer was correctly stricken from the record for the reason that it was clearly based upon speculation. Moreover it was cumulative. The evidence sought to be elicited from the witness was subsequently furnished by him without objection. He testified: "He was in the front seat, he was knocked out and his face was full of blood. . . . (He) did not speak to me and appeared to be in an unconscious condition. . . . I did not smell any intoxicating liquor on or about Ralph Morotti and it is my opinion that he was sober

at that time.'' The challenged ruling was therefore not erroneous. The exclusion of the answer was harmless to the defendants.

There is a direct conflict regarding the question of Ralph Morotti's sobriety at the time of the accident. This was therefore a problem for the determination of the court. There was also a conflict of evidence regarding the question as to whether plaintiff's subsequent affliction of neurotic oedema and enlargement of the thyroid gland resulted from the injuries sustained in the accident. There was reputable expert testimony that these ailments did result from that cause. This court is therefore bound by the trial court's conclusions in that regard.

■ Over the objection of appellants, the defendant Ralph Morotti, a minor, who was called by the plaintiff under the provisions of section 2055 of the Code of Civil Procedure, was permitted to testify that he held a driver's license at the time of the accident which was issued upon the written indorsement of his father, Adolph R. Morotti. It is now asserted this oral admission is not the best evidence of the fact. This contention is without merit. Conceding that this ruling was erroneous, it is harmless. The holding of an operator's license by Ralph Morotti, and the indorsement of his application therefor by his father were admitted facts. No evidence was necessary regarding these facts. The amended complaint specifically alleged these very facts. They were not controverted by the answer, They are therefore admitted to be true. (Sec. 462, Code Civ. Proc.; 21 Cal. Jur. 155, sec. 106.) The code section above cited provides that:

"Every material allegation of the complaint, not controverted by the answer, must, for the purpose of the action, be taken as true.''

■ Finally it is asserted the attorney for plaintiff was guilty of prejudicial misconduct in inferring by means of his cross-examination of the witness Alice Young, that an insurance company was involved in this litigation. This witness had been employed by the defendants to obtain evidence which might refute the plaintiff's claim that she was permanently and seriously injured as a result of the accident. After considerable evidence to that effect had been .elicited on examination in chief, counsel for the plaintiff asked

her: "Q. Who was your employer? Mr. Tope [one of defendants' attorneys]. Q. Are you sure? A. Positively. Q. Weren't you employed by an insurance company? A. I was employed by Mr. Tope." This examination was assigned as prejudicial. The answer of the witness does not disclose the interest of any insurance company. This question regarding an insurance company appears to have been uncalled for. It was, however, harmless under the circumstances of this case. We cannot assume that a trial judge would wrongfully base his judgment upon a mere inference, concerning which there was no proof, and the consideration of which every trial judge knows to be incompetent and improper.

The judgment is affirmed.

Plummer, J., and Preston, P. J., concurred.