[Civ. No. 14580.   First Dist., Div. Two.   May 16, 1952.]

SAM RACKSON, Respondent, v. FRED BENIOFF,
Appellant.

Henry B. Nathan and Herbert Chamberlin for Appellant.

Gladstein, Andersen & Leonard for Respondent.

GOODELL, J.—Respondent sued on a promissory note for $2,500 dated August 9, 1947, payable February 9, 1948.

The answer alleges that the note was obtained through misrepresentation and that the consideration therefor had failed. As a separate defense the answer pleads that the note was given in part payment for 50 shares of stock of Du Bain Furs, Inc., sold by respondent to appellant for $100 a share, and that at the same time appellant acquired 50 other shares in the same corporation from William E. Du Bain in exchange for stock in another corporation; that the 100 shares so purchased from both vendors represented all the outstanding stock of Du Bain Furs, Inc. It pleads also that prior to the purchase plaintiff and Du Bain represented in writing "that the shop and equipment, vaults, display showroom furniture, shop supplies, linings, etc." (in the quarters of Du Bain Furs, Inc. in Santa Barbara, which appellant was then acquiring by buying the 100 shares of stock) had an actual value of $8,000. Such representation was alleged to have been false, and made with the intent to deceive defendant and to induce him to purchase the 100 shares. It was alleged that the actual value of such equipment did not exceed $2,500. A further defense alleged a failure of consideration on the same grounds.

The jury returned a verdict for $2,768.40, and from the judgment entered thereon this appeal was taken after the denial of a new trial.

The transaction was a simple one, consummated at appellant's place of business in San Francisco on August 9, 1947. Respondent endorsed and delivered to appellant the certificates evidencing his ownership of the 50 shares and turned over to appellant the corporate papers, minutes, and seal, and the keys to the Santa Barbara store, and appellant delivered the notes. An agreement reading as follows was then and there signed by respondent and Du Bain:

"We the undersigned, jointly and severally hereby certify that the attached papers showing liabilities of Du Bain Furs, Inc., as of August 9th, 1947, accounts receivable as of August 9th, 1947, inventory as of August 9th, 1947, and statements

on the attached papers entitled 'Statement as of August 9th, 1947,' are true and correct in all particulars and we agree that we will jointly and severally pay any additional liabilities and hold Du Bain Furs, Inc., harmless from any liabilities other than those mentioned on the attached paper.

"We further jointly and severally agree that we will pay all back taxes of any nature due as of August 9th, 1947, by Du Bain Furs, Inc., which are not mentioned on the attached papers and that if Du Bain Furs, Inc., is required by any Governmental Agencies, City, State or Federal, to pay taxes due as of August 9th, 1947, or penalties thereon not mentioned in the attached papers, we will immediately reimburse Du Bain Furs, Inc., for such payment.

"This agreement is for valuable consideration . . ."

Attached thereto is a statement as of August 9, 1947, initialed by Rackson and Du Bain reading:

"Inventory .............. $8,459.50
"Accounts Receivable...... 4,156.00
"Paid up Insurance....... 189.68
"Cash in the Bank......... 192.13
"*Shop and Equipment Vaults, Display Showroom Furniture Shop supplies, Linings, Etc.*..... 8,000.00
"Deposit at State Sales Tax 25.00

"Total Assets ............$21,022.31
"Liabilities .............. 7,766.60" (Italics added.)

In addition to the $2,500 note in suit appellant delivered to respondent a note for $2,500 payable on December 9, 1947, the two notes representing the $5,000 purchase price for respondent's 50 shares. He also signed and delivered a third note, for $1,500, evidencing a debt owed by Du Bain to Rackson which (it was understood by appellant, respondent and Du Bain) was being paid by appellant for Du Bain's account and deducted from the amount which appellant owed Du Bain on the purchase of the latter's 50 shares.

The first note for $2,500 was paid off in September, three months before its maturity, for $2,000, Rackson allowing a $500 discount.

Du Bain's sale of his 50 shares to appellant was a separate transaction between themselves, and Du Bain is connected only collaterally with this case; he is not a party and was not

a witness. Appellant gave Du Bain, in exchange for his 50 shares in Du Bain Furs, Inc., stock in Arnold Best Company, a corporation in which appellant was interested.

Appellant visited the Santa Barbara store for the first time in November, 1947, three months after the sale. According to his testimony he found it in very unsatisfactory condition, and he testified in detail as to the difference in values of the articles of equipment as he claims to have found them, as compared with the values as fixed by respondent and Du Bain. In short he testified that the articles listed under the $8,000 item were worth no more than $2,500.

The $1,500 note matured on January 9, 1948, and was paid off when due, notwithstanding appellant claims to have discovered the fraud two months before. Appellant explained this inconsistency by testifying that it was handled through his bank.

Respondent first learned of appellant's claim of fraudulent misrepresentation only about February 9, 1948, when the note in suit fell due, by a letter from appellant's attorney saying that the $8,000 value placed on the equipment and fixtures had been misrepresented. This action was then filed.

Appellant's counsel says that ''The sole ground on appeal is that the jury was misdirected to the prejudice of appellant on the law applicable to the defenses of fraud and failure of consideration. On those issues the evidence was in sharp conflict. Its sufficiency to support the judgment for plaintiff is not questioned.'' Appellant at the same time contends that the evidence was also sufficient to support a judgment for defendant, and that would appear to be correct.

Before discussing the instructions it should be noted that a few days before the sale the Santa Barbara store was visited by one Abe Weinblatt who had been associated with appellant in different fur ventures and enterprises for over 35 years and was thoroughly familiar with the fur business. Weinblatt testified that on this visit he made but a casual inspection of the store, lasting about an hour, while respondent testified that it was a minute inspection lasting two or three hours. Weinblatt was present at the closing of the transaction and told appellant to go ahead and sign. From these circumstances plus the fact that Weinblatt advised appellant ''that the location [of the Santa Barbara store] was a desirable one . . . from the retail point of view,'' it would seem that the jury might well have concluded that Weinblatt represented appellant when he looked over the store and its equipment and that

his inspection was therefore appellant's inspection; that the investigation was an independent one, made by an experienced and expert fur man, and hence that appellant, who has been in the fur business all his life, did not rely at all on the $8,000 figure.

Of the $21,022.31 of listed assets the only item attacked is that of $8,000. The wide disparity of $5,500 between the $8,000 valuation and appellant's $2,500 valuation presented the principal issue in the case. For this reason the following instruction (numbered X), given at respondent's request, was of primary importance:

"The agreement included in defendant's exhibit 'B' is a contract . . . on which the defendant could sue the plaintiff and William E. Du Bain for damages for any losses sustained by the defendant caused by the failure of plaintiff and Du Bain to include in Exhibit 'B' any liabilities of the corporation . . . or by any taxes owed by the corporation as of August 9, 1947. *It would not be possible, however, to sue the plaintiff or Du Bain, on that contract, for any damages caused by any misrepresentation."* (Italics added.)

The last sentence told the jury, in effect, that even if it found respondent's $8,000 valuation to be a misrepresentation —and that was the real basis of the defense—appellant would find himself without a remedy.

The error is accentuated by what precedes the last sentence, wherein the jurors were given the particular parts of the contract on which defendant "could sue," namely, the failure to include "any liabilities of the corporation . . . or . . . taxes owed . . . as of August 9, 1947." The emphasis placed on those items contrasts sharply with the statement that "It would not be possible . . . to sue the plaintiff or Du Bain, on the contract, for any damages caused by any misrepresentation" since neither the failure to include outstanding liabilities nor unpaid taxes was in issue.

It goes without saying that if a defendant, when sued on a promissory note or other obligation, sets up fraud or failure of consideration (as was done here) he must plead a cause of action against the plaintiff and prove his case in the same manner as if he had elected to bring a separate action. Hence when the court told the jurors that *appellant could not sue,* it told them (although not in so many words) that *he could not plead a fraudulent representation defensively.*

A half dozen or more instructions tendered by appellant told the jury in one form or another that a defendant, when

sued on a promissory note or other obligation, *could* set up fraud as a defense, thus creating a series of direct conflicts with instruction X.

In *Sebrell* v. *Los Angeles Ry. Corp.*, 31 Cal.2d 813, 817 [192 P.2d 898], the court said: "Instructions that are contradictory in essential elements may warrant the reversal of a judgment on the ground that it cannot be ascertained which instruction was followed by the jury. (*Chidester* v. *Consolidated People's Ditch Co.*, 53 Cal. 56, 58; *Starr* v. *Los Angeles Ry. Co.*, 187 Cal. 270, 280 [201 P. 599]; *Soda* v. *Marriott*, 118 Cal.App. 635, 643 [5 P.2d 675].) In determining whether there is such a conflict the decisive question is whether the instructions read as a whole and in the light of the circumstances of the case in which they were given, are apt to confuse a person of ordinary intelligence."

In the Chidester case, just cited, it was said: "If it be claimed that the error in this instruction was cured by the first instruction given at the request of the defendant, the answer is that the two instructions are in this particular contradictory, and it is impossible to determine on which of them the jury acted [citations]." In *Noce* v. *United Railroads*, 53 Cal.App. 512, 519 [200 P. 819] (followed in *Soda* v. *Marriott*, 118 Cal.App. 635, 643 [5 P.2d 675]), the court said: "Where two instructions are contradictory in essential particulars the judgment must be reversed [citations]." See, also, 2 California Jurisprudence, page 1027.

Respondent tendered instruction XIV, which the court gave, as follows: "Where the stock of a corporation is issued for a consideration consisting of property, and the corporation and the stockholder[s] have agreed upon a valuation for the property transferred, such valuation is conclusive in the absence of fraud. *There has been no evidence introduced in the trial of this case tending to show, or for the purpose of showing, that the valuation placed upon property by the stockholders of Du Bain Furs, Inc. was fraudulent in purpose or effect or at all.*" (Italics added.)

The whole question in this case was (to paraphrase) whether the "evidence introduced in the trial of this case" showed "that the valuation placed upon property by the stockholders of Du Bain Furs, Inc. was fraudulent in purpose or effect or at all." Appellant's testimony that the property had been overvalued by as much as $5,500 was certainly evidence tend-

ing to prove fraud, but the last sentence of the instruction removed it summarily from the case.

Respondent seeks to justify the instruction by arguing that when both sentences are read together it is clear "that this instruction referred to the valuation placed upon certain material by the stockholders when the corporation was formed, and is set forth in the minutes of the first meeting of the corporation" which were exhibits in the case. The answer to that argument is that the only issue before the jury was the correctness of the $8,000 figure which Rackson and Du Bain certified to appellant on August 9, 1947, as the true value. The jury was not concerned with some valuation which Rackson and Du Bain might have agreed on between themselves when the two-man corporation was organized some months earlier. If the instruction means what counsel suggests, it was misleading and confusing and injected a wholly foreign issue into the case, which in itself was error. Whatever the first sentence may mean, there can be no doubt that the jurors must have understood the words "the valuation placed upon property by the stockholders" to refer to the $8,000 certified in the writing of August 9, 1947, since that was the only issue before them.

Appellant points to other errors in the charge, but we see no reason to discuss them since it is to be presumed that on a new trial correct instructions will be given.

In our opinion it was prejudicial error to give instructions X and XIV.

The judgment is reversed.

Nourse, P. J., and Dooling, J., concurred.