[Civ. No. 15086. First Dist., Div. One. June 23, 1952.]

PERCY A. CANNIS, Appellant, v. DI SALVO TRUCKING COMPANY (a Corporation) et al., Respondents.

Ricksen, Freeman & Johnson and Stanley C. Smallwood for Appellant.

Keith, Creede & Sedgwick for Respondents.

PETERS, P. J.—Percy A. Cannis brought this action to recover for personal injuries suffered by him in a collision between his automobile and a truck operated by Thomas P. Hamby, then working in the course and scope of his employ-

ment with the Di Salvo Trucking Company. The jury returned verdicts in favor of defendants. Plaintiff appeals.

Appellant's main argument is that the trial court committed prejudicial error in instructing on the law applicable to making "U" turns in residential and business districts, without also giving the jury the statutory definitions of such districts. He also points out that there was no evidence that plaintiff was making a "U" turn at the time of the accident. Respondents, while conceding that there was no evidence that plaintiff was making a "U" turn at the time of the accident, and for that reason admitting that the giving of the instruction was error, contend that such error was not prejudicial. The sole point to determine on this appeal is whether the admitted error in the giving of this instruction without clarifying instructions, requires a reversal. This depends, of course, on the facts.

The accident occurred in front of the Golden Brand Bottling Company on Barneveld Avenue, a north-south street in San Francisco, just about where Barneveld Avenue branches into a "Y," with Loomis Street becoming the westerly prong of the "Y," and McKinnon Avenue the easterly prong.

There were only two eyewitnesses who testified as to the facts surrounding the accident. They are the two participants, appellant and respondent Hamby.

Appellant's version is as follows: At about 9:30 a. m. of May 4, 1949, he was driving his coupé automobile south on Barneveld at about 20 to 25 miles per hour, intending to visit the Golden Brand Bottling Company, which was on his left side of the street. As he approached the "Y" above mentioned, and while about 100 to 150 feet north of Golden Brand, he decreased his speed, drove closer to the center of Barneveld and gave a left-turn arm signal. Just before he reached a point opposite to the south gate of Golden Brand, because of approaching northbound traffic, he lowered his arm to indicate a stop. He remained stopped for four or five seconds, looked into the rearview mirror inside his car, saw a large truck about 100 feet behind him in the same lane of traffic, and then looked into his rearview mirror located outside the car on the left side, and saw no approaching traffic. He then raised his left arm to indicate a left turn, and proceeded to turn at about 5 miles per hour. He was intending to park in the parking area on the side of the south gate, or to park in that gateway. In either event, he would have parked at right angles to the curb. In other words, he was not intending to

make a "U" turn. When he had proceeded a short distance after starting his turn, he heard the screeching of brakes and tires, and then came the collision. At no time prior to the accident did he see the pickup truck being driven by respondent Hamby. He suffered serious injuries in the accident.

Hamby's version of the facts, evidently believed by the jury, was far different from that given by appellant. He was driving a G.M.C. pickup truck south on Barneveld at about 25 to 30 miles per hour. A short distance ahead of him was a tractor and semitrailer traveling in the same direction and at about the same speed. This was apparently the truck observed by appellant in his rearview mirror. As that truck approached the "Y" in Barneveld Avenue, it veered to the right to go up the westerly prong of the "Y," that is, Loomis Street. When that occurred, Hamby first saw appellant's car about 100 feet ahead of him and about 150 feet from the scene of the ultimate collision. Appellant was then going at about 20 miles per hour. Hamby believed that appellant was going straight down Barneveld, so he honked his horn to indicate an intent to pass. When the right front wheel of Hamby's truck was just about even with the left rear wheel of appellant's coupé, appellant made a sharp left turn directly in front of Hamby. Appellant's car was then traveling 5 to 10 miles per hour. Hamby was positive that appellant did not stop before making the left turn, and also testified that he saw no arm signal of any kind given by appellant.

The sole contention of appellant is that prejudicial error was committed in the giving of an instruction presented by respondents in the language of section 541 of the Vehicle Code, without also giving the definitions of "business" and "resident" districts as set forth in that code, in view of the fact that there is no evidence as to the nature of the district.

The complained of instruction reads as follows:

"Section 541 of the same code provides as follows:

"(a) No vehicle in a business district shall be turned so as to proceed in the opposite direction, except at an intersection.

"(b) No vehicle in a residence district shall be turned so as to proceed in the opposite direction when any other vehicle is approaching from either direction within 200 feet, except at an intersection."

This instruction was the last of a series of instructions given by the court quoting some of the provisions of the Vehicle Code. Thus, the court gave the statutory definition of a

"street" or "highway" contained in section 81; the basic speed law as set forth in section 510; the duties of the overtaking driver in passing to the left (§ 528), and to the right (§ 529); the limitations on turning a vehicle as set forth in section 544; and the regulation as to arm signals as set forth in section 546. Then the court gave the challenged instruction. Immediately after the challenged instruction, the court gave an instruction on imminent peril, and then gave the following: "The law did not require that before Mr. Cannis was entitled to make his lefthand turn that it be absolutely safe for him to do so. The only requirement of the law in this regard was that he take what precautions a reasonably prudent person would have taken under the circumstances reasonably appearing to him at that time; and if you find from the evidence that Mr. Cannis did this, then I instruct you that he was not guilty of negligence."

No instruction was given to the effect that a violation of section 541 constituted negligence *per se,* or even negligence; in fact, the last-quoted instruction implies the contrary.

Appellant urges that no definition was given of "residential" and "business" districts. (See Veh. Code, § 89, defining "business" district, and § 90 for a definition of "residence" district.) In support of his contention that it was error to fail to give these definitions, appellant places his greatest reliance on *Vicino* v. *Amador,* 71 Cal.App. 604 [236 P. 369]. In that case the plaintiff and defendant were proceeding in opposite directions on the highway. Defendant made a left turn in front of plaintiff, and a collision resulted. A judgment for plaintiff was reversed because of instructions to the effect that the jury should consider whether defendant made the turn "in a closely built up district where there was no intersection of streets," and if defendant did make such a turn "in a closely built up district" he was guilty of negligence as a matter of law. There was no definition given of a "closely built up district," and no evidence as to the nature of the district. The court first held that it was error not to have defined the phrase "closely built up district," and then demonstrated that such error was prejudicial because the jury was instructed that such conduct, if it occurred, required a verdict for the plaintiff. There can be no doubt that the court held that the failure to define "a closely built up district" was error, but it is equally apparent that the court held that such error became prejudicial because of the direction to find for the plaintiff if the accident happened in such a

district. This last-mentioned error does not appear in the instant case.

The other case mainly relied upon by appellant is *Adrian* v. *Guyette*, 14 Cal.App.2d 493 [58 P.2d 988]. Guyette was one of several defendants, it being claimed that his car first hit another car which hit plaintiff. The evidence was that Guyette was traveling between 35 and 50 miles per hour just prior to the accident. There was no evidence as to the nature of the district. The trial court instructed in regard to the prima facie speed limit in a residence district, and gave the statutory definition of such a district, but left it to the jury to determine the nature of the district. The court held this to be prejudicial error, stating (p. 505) : "In the instant case the evidence was conflicting on the speed at which young Guyette was proceeding west on Eleventh Street just prior to the accident. It was variously estimated at between thirty-five and fifty miles an hour. According to his own testimony, if he were driving in a residence district he was guilty of *prima facie* negligence in driving faster than twenty-five miles an hour and the jury might have concluded that he was actually guilty of negligence *per se*. . . . As he was driving outside a business or residence district this result could not have followed unless the jury concluded that his speed was in excess of forty-five miles an hour. The majority of the witnesses placed his speed at the latter figure or less. The verdict of the jury might easily have been based on the erroneous assumption that the portion of Eleventh Street was in a residence district and that the speed of from thirty-five to forty miles an hour, which young Guyette admitted, was negligence *per se* which was in itself sufficient to make him responsible for the injuries to plaintiffs. Under these circumstances we regard the instructions to which we have referred as prejudicially erroneous requiring reversal of the judgment."

Obviously, that case has no application to the problem here presented. ▪ In the instant case we have an instruction as to the rules applicable to a "U" turn in a residence or business district. No definition of such districts was given. The photographs introduced into evidence show quite clearly that it was an industrial district. Most important, however, is the fact that the evidence shows that the appellant was making a left turn and not a "U" turn. No one contends to the contrary. A reading of the evidence and of the instructions demonstrates that the basic issue presented to the jury was

whether appellant was guilty of negligence in making his left turn. That depended upon whether the jury believed appellant or Hamby. On that issue the jury was fully and fairly instructed. Under the circumstances, error in the giving of the "U" turn instruction and the failure to elaborate on it could not have been prejudicial.

 Of course, where the jury may have been misled, the giving of an abstractly correct instruction, not applicable to the facts, may constitute reversible error. (*Ketchum* v. *Pattee*, 37 Cal.App.2d 122 [98 P.2d 1051].) But it is equally clear that before a judgment will be reversed for an erroneous instruction it must appear that the jury was or could have been misled. (Cal. Const., art VI, § 4½; *Hamm* v. *San Joaquin, etc. Canal Co.*, 44 Cal.App.2d 47 [111 P.2d 940]; *Mehollin* v. *Ysuchiyama*, 11 Cal.2d 53 [77 P.2d 855]; *Cunningham* v. *Coca-Cola Bottling Co.*, 87 Cal.App.2d 106 [198 P.2d 333].) The proper rule was stated as follows in *Sortino* v. *Loneoak*, 66 Cal.App.2d 876, 883 [153 P.2d 428]:

"It is not reversible error for the court to instruct the jury upon a principle of law, even though there may be an entire absence of evidence on that particular subject, unless it also appears that the jury was misled and prejudiced thereby. That prejudice does not appear in the present case.

"It has been uniformly held that 'An instruction, erroneous or correct, which relates to matters as to which there is no evidence will not justify a reversal unless it has misled the jury to the prejudice of the appellant.' [Citing several authorities.]"

In the present case the instruction given and the failure to give the explanatory instructions could not possibly have misled the jury. That being so, there was no prejudice.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.