[L. A. No. 22613.   In Bank.   Dec. 4, 1953.]

W. A. LEO, Appellant, v. RUFUS ALBERTSON DUNHAM, Respondent.

A. J. O'Connor and H. K. Lyle for Appellant.

Bauder, Gilbert, Thompson & Kelly and Jean Wunderlich for Respondent.

EDMONDS, J.—A Ford tank truck operated by Rufus A. Dunham struck and seriously injured Willard A. Leo. Upon his appeal from the judgment in favor of Dunham, Leo charges that the instructions to the jury upon the doctrine of imminent peril were prejudically erroneous.

The accident occurred when Leo walked across a highway running north and south. On each side of the highway, which had lanes 10 feet in width, there was a 6-foot improved shoulder but no curbs. As Leo started to cross from east to west, he looked to his right and observed Dunham's truck approaching in the far lane and about 300 feet to the north. Upon the assumption that he had time to cross the highway, Leo attempted to do so, and did not thereafter look in the direction of the approaching vehicle.

In the meantime, Dunham saw Leo begin to walk across the highway, looking in the opposite direction. Nevertheless, Dunham continued his approach at about 35 miles per hour, but not until he had reached a point some 60 or 80 feet away did he conclude that a collision was imminent. He applied his brakes, "hollered," and swerved to his right. Leo did not look around until the truck suddenly "showed up in front" of him. In fact, there is evidence that he walked into the side of the truck.

The point of impact is the subject of some uncertainty. Dunham testified that the collision occurred "six feet west of the westerly edge of the traveled portion of the highway." Leo told the jury that he was in the left-hand lane of traffic at the time he was struck. The traffic officer who investigated the accident also placed Leo in that lane at the time of the

collision. According to the officer, the point of impact was one foot east of the west line of the left lane.

The jury was given the usual instructions concerning negligence, contributory negligence and proximate cause. In addition, at the request of Dunham, the rule as to the doctrine of imminent peril was stated.

The doctrine has been variously characterized as the "sudden peril rule" (*De Ponce* v. *System Freight Service,* 66 Cal. App.2d 295, 301 [152 P.2d 234]; *Uhl* v. *Fertig,* 56 Cal.App. 718, 724 [206 P. 467]), the "imminent peril doctrine" (*Stickel* v. *Durfee,* 88 Cal.App.2d 402, 407 [199 P.2d 16]; *Yates* v. *Morotti,* 120 Cal.App. 710, 716 [8 P.2d 519]), and the "emergency doctrine" (Rest., Torts, vol. II, Negligence [1934] § 296, p. 796; Prosser on Torts [1941] § 37, p. 242). ■ However, under the cases and the authorities, a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. (*Stickel* v. *Durfee, supra,* pp. 407-408; *Gamalia* v. *Badillo,* 53 Cal.App. 2d 375, 378 [128 P.2d 184]; *Graham* v. *Consolidated M. T. Co.,* 112 Cal.App. 648, 652 [297 P. 617]; Rest., Torts, *supra,* vol. II, Negligence [1934] § 296, p. 796; Prosser on Torts, *supra,* [1941] § 37, p. 242; and see *Bosserman* v. *Olmstead,* 77 Cal.App.2d 236, 240 [175 P.2d 49].)

■ An instruction should be given only when it is applicable to the issues raised by the pleadings or it is pertinent to some issue or theory developed by the evidence. (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 633 [255 P.2d 795]; *Garcia* v. *Conrad,* 40 Cal.App.2d 167, 170 [104 P.2d 527]; *Arundel* v. *Turk,* 16 Cal.App.2d 293, 297 [60 P.2d 486].) The decisive factor here is the time when Dunham knew, or should have known, that an accident would occur unless preventive steps were taken. Dunham takes the position that the evidence reasonably supports the inference that he was suddenly and unexpectedly confronted with an emergency when, for the first time, he realized that Leo would not keep out of the line of the truck's travel. As he presents the facts, it cannot be said, as a matter of law, that he had previously been guilty of any negligence. Under such circumstances, he says, he is entitled to the benefit of the doctrine of imminent peril.

Leo argues that there was nothing sudden or unexpected about his own conduct, and Dunham's "sudden realization" was in fact nothing more than belated awareness of an error in judgment. Dunham's responsibility, it is argued, is determined by his conduct viewed in its entirety from the moment he first sighted Leo and continuing until the collision. Based upon that premise, Leo asserts, any imminent peril was occasioned by Dunham's negligence, and the doctrine is inapplicable.

■ Ordinarily, whether a person has been suddenly confronted with imminent peril is a question of fact to be submitted to the jury. (*Kehlor* v. *Satterlee,* 37 Cal.App.2d 116, 119 [98 P.2d 759] ; and see *De Ponce* v. *System Freight Service, supra,* p. 301.) Although the evidence here justifies an inference of negligence on the part of Dunham, it also reasonably supports the jury's implied finding that he was not negligent until the time he concluded that Leo was not going to look around again. (*Cf. Varner* v. *Skov,* 20 Cal.App.2d 232, 238 [67 P.2d 123].) Both parties saw each other when they were 300 feet apart. Leo was crossing a roadway at a point not within a marked crosswalk nor within an unmarked crosswalk at an intersection. Dunham had the right of way. (Veh. Code, § 562[a].) ■ "The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person." (*Harris* v. *Johnson,* 174 Cal. 55, 58 [161 P. 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477] ; *Dickinson* v. *Pacific Greyhound Lines,* 55 Cal.App.2d 824, 827 [131 P.2d 401] ; and see *Folger* v. *Richfield Oil Corp.,* 80 Cal.App.2d 655, 665 [182 P.2d 337].) ■ Moreover, a reasonably prudent person might well anticipate an existent danger from the approach of a truck only 300 feet away at the time he started to cross a street and would not thereafter ignore its presence. (*Fischer* v. *Keen,* 43 Cal.App.2d 244, 249 [110 P.2d 693].) Dunham, therefore, reasonably might have expected Leo to take further care for his own safety by again looking toward the approaching truck during the crossing.

For these reasons, it cannot be said, as a matter of law, that Dunham was negligent in failing to anticipate until the truck was some 60 to 80 feet from Leo that Leo was not going to yield the right of way. At that instant Dunham

reasonably may be said to have been confronted unexpectedly with a sudden and imminent peril, and a deliberately calculated and cool choice was no longer possible. Accordingly, the record shows adequate basis for the instruction on imminent peril.

The judgment is affirmed.

Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I feel that there was no basis in the record for the instruction on imminent peril and that the giving of that instruction constituted reversible error within the meaning of article VI, section 4½, of the Constitution of California.

Defendant saw the plaintiff start to cross the highway when he was 300 feet away; he knew plaintiff was looking in the opposite direction, but he continued his approach at the same speed at which he had been proceeding. Not until he was from 60 to 80 feet away from the plaintiff did he decide that he was going to hit the plaintiff. At this time, he applied his brakes, called out, and swerved to the right. The evidence on the point of impact was in conflict and is, according to the majority opinion, "the subject of some uncertainty." Defendant realized that the plaintiff was unaware of his danger and yet he continued on his course, waiting for the plaintiff to look in his direction and stop, until it was too late to stop the truck. The defendant knew that the danger of the situation continued as long as the plaintiff was looking in the opposite direction and simply took the chance that plaintiff would look and see the truck approaching. The emergency was caused by defendant's negligence, and the doctrine has been held not available to one in such a position (*Yates* v. *Morotti*, 120 Cal.App. 710, 716 [8 P.2d 519]; *Dodds* v. *Gifford*, 127 Cal.App. 629, 632 [16 P.2d 279]; 65 C.J.S., p. 412). In *Wright* v. *Sniffin*, 80 Cal.App.2d 358 [181 P.2d 675], the doctrine of imminent peril was held inapplicable to the conduct of a driver who voluntarily and wrongfully placed himself in a dangerous position by attempting to pass a bicycle within 100 feet of an intersection. Defendant had seen the child on the bicycle while he was some distance away; had sounded his horn when he was within 200 feet of the child who apparently did not hear the warning. The defendant there then attempted to pass when the child veered her bicycle

to the left and was instantly killed in the resulting collision. There, as here, the defendant was at all times aware of the plaintiff's danger. There, as here, defendant assumed that the plaintiff would realize the danger. There, as here, the emergency was created by the defendant.

In *Fraser* v. *Stellinger,* 52 Cal.App.2d 564, 567 [126 P.2d 653], the defendant saw the plaintiff, who was riding a bicycle, about 1,000 feet ahead of him. When he was about 50 feet behind the plaintiff, he sounded his horn which was not heard by the plaintiff. When defendant was from 2 to 5 feet to the rear of the bicycle, the plaintiff swerved his vehicle across the path of the defendant's truck. It was there held that the refusal of the trial court to give an instruction on the doctrine of sudden emergency was not error because the defendant had the rider in view for 1,000 feet as shown by his own testimony, and that "[f]urthermore the case was tried by the parties each claiming the accident was caused by the negligence of the other. The jury was fully instructed on the rules of law applicable to the respective theories of the alleged negligence of the defendant and the contributory negligence of the plaintiff."

In *Rhodes* v. *Firestone Tire etc. Co.,* 51 Cal.App. 569 [197 P. 392], the doctrine of sudden emergency was held inapplicable where the driver of defendant's truck had ample time and space to avoid the collision with plaintiff's truck.

In *Stealey* v. *Chessum,* 123 Cal.App. 446 [11 P.2d 428], where defendant driver saw the plaintiff's decedent, a pedestrian, when she was from 6 to 10 feet ahead of him, the appellate court held it was reversible error to give an instruction on sudden emergency without the qualification that defendant must have been free of negligence.

In *Gootar* v. *Levin,* 109 Cal.App. 703 [293 P. 706], it was also held reversible error to give the instruction without the qualification; in *Jones* v. *Heinrich,* 49 Cal.App.2d 702 [122 P.2d 304], the same rule was set forth.

In the present case, the pleadings put in issue the questions of negligence and contributory negligence. There was no evidence to support an instruction which told the jury that "[a] person who, *without negligence on his part,* is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him

in the exercise of ordinary care in calmer and more deliberate moments. . . ." (Emphasis added.) This instruction had no place in the case, and could have had no other effect than to confuse the jury. The majority in an endeavor to hold that no prejudicial error was present because of the giving of the instruction suggests that Dunham, "therefore, reasonably might expect Leo to take further care for his own safety by again looking toward the approaching truck during the crossing" and concludes that "it cannot be said, as a matter of law, that Dunham was negligent in failing to anticipate until the truck was some 60 to 80 feet from Leo that Leo was not going to yield the right of way." The fact remains that it cannot be said as a matter of law that defendant was *not* negligent. Plaintiff's failure to watch for approaching vehicles goes to the issue of contributory negligence. In order for the doctrine to apply to defendant's conduct, there must have been no negligence, as a matter of law, on his part until he was confronted with the sudden emergency. Under the facts presented here, it cannot be said, as a matter of law, that defendant was exercising the care of the ordinarily prudent man in *assuming* that plaintiff would turn and see his vehicle approaching. And, the fact does remain that defendant was at all times aware that plaintiff was walking across the roadway without looking in his direction. As a result, there was no basis in the evidence of the instruction. The giving of an instruction which is unsupported by the evidence has been held to constitute reversible error (*Scandalis* v. *Jenny*, 132 Cal.App. 307 [22 P.2d 545]; *Davenport* v. *Stratton*, 24 Cal.2d 232 [149 P.2d 4]). The instruction on sudden emergency, under the facts of this case, was inconsistent with the instruction on negligence as it applied to the defendant. It is impossible to ascertain here whether the jury found that plaintiff was contributorily negligent, or that defendant was free from negligence, or that defendant was excused from the consequences of his negligence because he was confronted with a sudden emergency. Instructions contradictory in essential elements may warrant a reversal on the ground that it cannot be ascertained which instruction was followed by the jury (*Carlson* v. *Shewalter*, 110 Cal.App.2d 655 [243 P.2d 549]; *Rackson* v. *Benioff*, 111 Cal.App.2d 124 [244 P.2d 9]; *Cannis* v. *Di Salvo Trucking Co.*, 111 Cal.App.2d 893 [245 P.2d 365]). Without an instruction on sudden emergency "a different verdict would not have been improbable" (*Delzell* v. *Day*, 36 Cal.2d 349, 351 [223 P.2d 625]).

I am in full accord with the views expressed in the learned and able opinion of the District Court of Appeal, Second Appellate District, Division Three, prepared by Mr. Presiding Justice Shinn when this case was before that court *(Cal. App.) 248 P.2d 935. By unanimous decision of that court a reversal was ordered because "the instruction [sudden emergency] should not have been given and we have no way of knowing that the jurors were not misled, or that the verdict would have been the same if the instruction had not been given. (See *Wright* v. *Sniffin, supra,* 80 Cal.App.2d 358, 365 [181 P.2d 675].)"

I would, therefore, reverse the judgment.

*A hearing was granted by the Supreme Court on Dec. 18, 1952.