Helen T. TASTOR, as administratrix of the estate of John L. Tastor, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 32611.

United States District Court, N. D. California, S. D.

June 2, 1954.

L. Charles Gay and Sol N. Ross, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Keith R. Ferguson, Sp. Asst. to the Atty. Gen., for defendant.

OLIVER J. CARTER, District Judge.

This is a suit under the Tort Claims Act, 28 U.S.C.A. § 1346 et seq., for damages for the death of John Tastor caused by the alleged negligence of Private Estel Beltz, an enlisted member of the United States Army. The decedent, John L. Tastor, was first mate of the S. S. Benjamin Grierson, which was moored to "R" Dock, Apra Harbor, Guam at the time of this unfortunate accident.

At approximately the hour of one o'clock a. m., April 7, 1948, the decedent Tastor returned to the ship accompanied by Don Saunders, chief steward, William Hall, second mate and Mr. and Mrs. Harry M. Rissman, both civilian employees of the United States at Guam. The group had been celebrating the Rissman's anniversary. The Rissmans had driven the officers back to the ship and the officers invited the Rissmans aboard for a cup of coffee in the mess hall before they returned to their home on Guam.

Private Beltz was stationed as sentry aboard the S.S. Benjamin Grierson. He recognized the decedent Tastor, who was in uniform as an officer of the Maritime

Service, as the first mate of the ship. He also passed the other members of the crew but, pursuant to his orders,[1] he refused to allow the Rissmans aboard the vessel and asked them to leave. An argument ensued, but at no time were any threats of personal violence made against Beltz. At this point Private Beltz drew his .45 automatic, inserted a clip of from 5 to 7 shells, drew back the slide charging a cartridge into the chamber, drew back the slide again ejecting an unfired cartridge upon the deck and charging a fresh cartridge into the firing chamber. He then fired one shot wildly, and the gun being of semi-automatic operation, it was again ready to fire. At this point both Tastor and Saunders lunged for Private Beltz in an effort to disarm him. In the struggle for the gun Tastor was shot through the heart and died on the spot.

It is the contention of the Government that Private Beltz' conduct constituted an assault and battery, and therefore excepted from the Tort Claims Act by 28 U.S.C.A. § 2680, "The provisions of this chapter and section 1346(b) of this title shall not apply to * * * (h) Any claim arising out of assault, battery, * * *." The Government relies primarily on Stepp v. U. S., 4 Cir., 207 F.2d 909; Lewis v. U. S., 3 Cir., 194 F.2d 689, and Maddux v. U. S., No. 13679–Y, D.C.S.D.California.

The law of Guam defines assault as, "An 'assault' is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Penal Code of the Territory of Guam, Sec. 240. The Civil Code of the Territory of Guam, Sec. 1714 provides:

"Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of

his property or person, except so far as the latter has, willfully or by want of ordinary care brought the injury upon himself * * *."

These sections were adopted from the California Codes bearing the same number. The Court of Appeals for this Circuit (9th), has recognized the propriety of looking to California decisions in aid of construing the law of Guam under these circumstances. U. S. v. Johnson, 181 F.2d 577.

■ The Government's position is that, if tortious, the mere drawing of a gun by Private Beltz constituted an assault and that of necessity, everything following therefrom was a battery. Under the facts this position is untenable. Private Beltz testified that the regulations provided that he was to draw his gun in order to make an arrest, and that he drew his gun pursuant thereto for the purpose of making an arrest. Therefore, the act of drawing his gun was not "unlawful", as used in Section 240, supra. Or in the language of the Restatement of Torts, Sec. 21, the act was privileged and therefore not tortious.

■ It was after Beltz had drawn his gun that his conduct therewith became extraordinary. He cocked his weapon twice, ejecting a live cartridge upon the deck. He then fired it wildly. In Rudd v. Byrnes, 156 Cal. 636, at page 640, 105 P. 957, at page 959, 26 L.R.A.,N.S., 134, the Court said:

"That defendant's conduct was negligent may well be conceded. 'As firearms are extraordinarily dangerous, a person who handles such a weapon is bound to use extraordinary care to prevent injury to others, and is held to strict accountability for a want of such care.' [Citing authorities.] * * *

"By reason of the dangerous nature of such weapons, a person han-

1. "Special Orders for Post No. 8, ....... No. 9. I will request all visitors to leave the Port Area at 2300." The Guam Port Regulations also provided in effect that no civilian female personnel were allowed aboard vessels unless accompanied by or vouched for by a commissioned officer of the Army or Navy. There was no evidence that Tastor had actual notice of either the Special Orders or the Port Regulations.

dling them is held to a high degree of care. If he has not used the degree of care appropriate to the circumstances, and injury result, he will be liable to the person injured, if the latter was without fault."

This Court agrees with the language quoted and finds that the manner in which Private Beltz handled his gun did not measure up to an ordinary standard of care much less the higher degree of care required of him. I, therefore, find that Private Beltz was negligent in the manner in which he handled the gun after it was drawn.

The Lewis, Stepp and Maddux cases relied upon by the Government are distinguishable from this case. In those cases, the sentry involved intentionally fired at or in the direction of the plaintiffs. In this case, Private Beltz testified that he did not intend to fire his gun at all, much less fire it at Tastor.

The Government further contends that decedent Tastor's own negligence in attempting to disarm the sentry Beltz was a proximate cause of his own death. If Tastor was guilty of contributory negligence, he cannot recover under the law of Guam. Walters v. U. S., D.C., 110 F.Supp. 631. But here the plaintiff urges that the "sudden peril rule" applies, see 19 Cal.Jur. 598. A recent expression of this doctrine appears in Leo v. Dunham, 41 Cal.2d 712, 714, 264 P.2d 1, 2:

> "However, under the cases and the authorities, a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments." (Citing cases.)

I believe that this is a proper case for the application of this rule in measuring Tastor's conduct.

There is a conflict in the evidence as to exactly what happened. Private Beltz testified that Tastor and others jumped him when he drew his gun and that in the scuffle the first shot killed Tastor. Eyewitnesses Harry Rissman and Don Saunders testified that Beltz fired wildly once before Tastor and Saunders attempted to disarm him, the second shot killing Tastor. (Saunders' deposition page 16). The Court has observed the demeanor of Private Beltz on the witness stand. He appears to be a highly nervous and unstable individual. Since this accident happened in 1948, Beltz was only nineteen at the time and less stable if anything. This view is strengthened by his admitted act of cocking his gun twice, ejecting a live cartridge before firing it. He explained this act by saying that he was nervous. Beltz was not faced with any desperate situation. This was a minor infraction of the Orders and Regulations. If in doubt, the Sergeant of the Guard was available.

Considering this conflicting testimony, the Court finds that Tastor did not attempt to disarm Beltz until Beltz had first fired one shot. Tastor was confronted with an emergency situation and in light of this situation he was not negligent in attempting to disarm Beltz. Tastor's conduct did not give rise to the sudden peril with which he was confronted.

Under these facts plaintiff is entitled to a judgment for damages against the defendant, and all that remains is to determine the amount of damages to be awarded.

The record discloses that at the time of his death Tastor was married to plaintiff and that they had one son living aged nineteen months; that he was a reserve officer on inactive duty in the United States Navy, having been released from active service with the rank of Commander in October, 1945; that at the time of his death he was Chief Mate, holding master's papers, and awaiting assignment as a master when the opening occurred; that he was receiving com-

pensation at the rate of $750 to $800 per month, out of which he made an allotment of $250 per month to his family, and, when paid off, brought home the balance less expenses; that he was in good physical condition and was age thirty-four on April 7, 1948, the time of his death; that he had a life expectancy of 34.29 years; and that plaintiff, his wife, was approximately twenty-nine years old at the time of his death.

Taking into consideration all of the circumstances of the case,[2] including the earning power of money, a just award would be $68,000, and costs.

Counsel for plaintiff is directed to prepare and submit findings of fact, conclusions of law and a judgment in accordance herewith.

---

**2.** See Section 377 of the Code of Civil Procedure of Guam, which reads as follows:

"When the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case, may be just."