[Civ. No. 12510.   Second Appellate District, Division Two.—May 29, 1940.]

MARY C. MARTIN et al., Respondents, v. LOS ANGELES TURF CLUB, INC. (a Corporation), Appellant.

George L. Greer and James V. Brewer for Appellant.

S. S. Hahn and W. O. Graf for Respondents.

McCOMB, J.—From a judgment in favor of plaintiffs after trial before a jury in an action to recover damages for personal injuries defendant appeals.

Viewing the evidence most favorable to plaintiffs (respondents), the essential facts are:

February 22, 1938, plaintiff Mary Martin with her husband, plaintiff Carl Martin, attended the races at Santa Anita race track. About 5:30 P. M. at the conclusion of the races she started to descend some steps in the grandstand. In doing so she stepped upon a bottle, fell, and received severe personal injuries. The jury returned a verdict in her favor in the sum of $6,000 and in favor of her husband for $250.

Defendant relies for reversal of the judgment upon these propositions:

*First: There is no substantial evidence to sustain the judgment.*

*Second: The trial court committed prejudicial error in instructing the jury relative to matters of law after the opening statements of counsel and before the taking of any evidence.*

*Third: The court committed prejudicial error in excluding the testimony of a witness that it was the practice of' all race tracks in the state to permit the sale of beer in bottles at racing meets.*

*Fourth: The trial court committed prejudicial error in instructing the jury on*

*(a) Defendant's duty of care;*

*(b) The weight of the evidence and burden of proof;*

*(c) Contributory negligence and proximate cause.*

*Fifth: The trial court committed prejudicial error in refusing certain instructions requested by defendant.*

*Sixth: The trial judge erred in submitting the second cause of action to the jury for the reason that the second cause of action did not state facts sufficient to constitute a cause of action.*

Defendant's first proposition is untenable. An examination of the record discloses substantial evidence taken in connection with the inferences which may be reasonably drawn therefrom to sustain each and every material finding of fact upon which the judgment was necessarily predicated. For example, plaintiff Mary Martin testified that she slipped on a bottle. Witness Deer testified that before and after the accident he saw "all kinds of stuff, including beer bottles, pop bottles", etc., on the steps. There can be no question that the jury was justified from this testimony in finding that plaintiff Mary Martin stepped upon a beer bottle and fell.

■ The second proposition is also untenable. After both counsel had made an opening statement to the jury the following occurred:

"The Court: It is the practice in this department to give the jury some general instructions before the evidence commences. If there is no objection, the court will do that at this time.

"Mr. Graf: That is satisfactory with the plaintiff.

"Mr. Brewer: No objections.

"The Court: It is satisfactory to the defendants?

"Mr. Brewer: Yes."

A little later the court said:

"Before the case is over, the court will have occasion to instruct you further, no doubt. The reason that we follow this practice in this department of discussing the law before the evidence comes in is that it seems to me that it is much more helpful to you if you have these principles in mind as the testimony comes in than it is to wait until the evidence is all in and the arguments have been made. I think you should be aided by an outline of what the issues are and as to your duty in weighing the evidence on these various issues as it comes in. Also, at the close of the case, if there are any further instructions to be given, I would prefer to give them before the argument starts, in order that counsel may comment on the instructions. I think that it is a right they should have, to discuss the facts of the case in view of the law that is stated by the court, and to comment on it and discuss the law as well as the facts. So, with these preliminary instructions and with the understanding, *if there is no objection,* the court will give any further instructions that may seem to be required before the argument commences, we will start in with the testimony." (Italics added.)

From the foregoing it is clear that defendant consented to the procedure followed by the court and thereby waived any irregularity in the time that the jury was instructed. ■ In passing we call attention to the fact that a practice which seems to be growing in the superior court is that of giving instructions orally without the aid of written memoranda and at times other than those which the usual practice and the code provisions sanction. Such practice is not to be commended. In section 607 of the Code of Civil Procedure the manner in which "the trial must proceed" is set forth and it is therein

provided that the court may charge the jury after the arguments.

A number of appeals have come to our attention where errors in the giving of instructions are urged, which errors have resulted from the failure of the trial judge to reduce his instructions to writing prior to delivering them to the jury. It is impossible for the most skilled attorney who has carefully prepared a case to accurately orally state the rules of law without the assistance of written memoranda. This task is even more difficult for the trial judges in Los Angeles County because of the multitude and variety of actions which they are continually called upon to preside over. A judge may finish the trial of an extremely complicated malpractice suit and immediately thereafter be called upon to try a complicated probate case or a highly important criminal proceeding. It is by far the better practice to reduce instructions to writing before delivering them to the jury, thus avoiding the possibilities of inadvertent error.

■ The third proposition is devoid of merit. After the trial judge sustained an objection to the evidence set forth in this proposition the following occurred and the witness testified:

"Q. Now these that you have mentioned, Hollywood Park, Del Mar, State Fair and Bay Meadows, tell us whether or not beer is sold in bottles at those parks at the time of the races.

"Mr. Graf: The same objection; objected to on the ground it is incompetent, irrelevant and immaterial, no proper foundation laid for the question.

"Court: Objection overruled."

It is thus evident that the question as to which an objection was sustained the trial court subsequently in substance permitted to be answered.

■ The objection contained in paragraph (a) of defendant's fourth proposition is untenable. The trial court instructed the jury thus:

"It was the duty of the defendant to exercise the care that was required to keep its premises in a reasonably safe condition in view of the uses that were to be made of the premises by the public which was invited to use them. . . . but it is guilty of negligence if it fails to use the requisite care to keep the place in a reasonably safe condition for use . . . whether the efforts, as I say that were made by the defendant to keep these premises clear from obstructions and in a

reasonably safe condition *were all that they should have been, considered from a practical standpoint."* (Italics added.)

However in addition to the foregoing instructions, which were inartfully worded, due in all probability to the fact that they had not been reduced to writing, the trial court did instruct the jury as follows:

"You have to inquire into the danger of the situation, if you find it was dangerous, and to determine what was required, what was reasonably required of the defendant to look for and to observe these conditions and to remove them."

"The Los Angeles Turf Club itself does not sell any beer. At the same time it operated this race course, and no matter what its contract rights may have been with other people, as long as it was operating the race course and maintaining the premises, it had the duty of using that care which was reasonably required to keep the premises in a reasonably safe condition; and if, to its knowledge, conditions were created by others and were suffered to remain, I think legally there is no difference between that situation and one in which the Turf Club itself created the condition."

"Negligence in this case would consist of only two things—first, the sale of beer in bottles, where the patrons were allowed to take them up into the grandstand and different parts of the premises and set the bottles down wherever they saw fit, without at the same time taking adequate precautions to guard against injury to the patrons by reason of the bottles being scattered around. That would be one basis for a finding of negligence, if you should find that the facts supported that theory of the case."

"Another would be that although a sufficient force of men was employed to keep the premises in a safe condition, that they failed to do so, or failed to perform the duties that they were supposed to perform in that respect."

"If you should believe that Mrs. Martin stepped on a beer bottle and that it was unsafe to sell beer to patrons in bottles to be carried into the grandstand, without taking ordinarily prudent precautions to prevent injuries from the beer bottles, and if you believe that fact to be established, that is, there were no such precautions taken, you would have a right to believe that the defendant was negligent."

"The conditions that are shown here by the evidence were open and notorious. Many people, apparently, deposited bottles in different parts of the premises, at different times

during the afternoon, bottles of various sorts, and they threw other things away in great quantities, so much so that the place, apparently, after any race was completed, was littered up worse than it would be after a kids' picnic. It is not contended that these conditions would not be noticed or seen by the patrons at the track. Mrs. Martin, as well as every other patron, was obliged to see what was in plain sight, that this place was cluttered up with debris and bottles.''

"All you have to determine is whether the Turf Club took the necessary precautions to keep this place in a reasonably safe condition, in view of all of the circumstances attending the manner in which the patrons used the premises.''

" . . . not as soon as they were deposited but as soon as it was practicable to pick them up in view of the number there were and the opportunities the men had to get through the crowd and gather them together.''

"If the bottle was negligently left there and Mrs. Martin stepped on it, the negligence of leaving it there would be proximate to that accident; and if Mrs. Martin was negligent in stepping on the bottle when she should have seen it and avoided it, of course, her negligence is proximate to the accident. So that there is no use discussing at length the doctrine of proximate cause.''

"This is in particular connection with the sale of beer in bottles and the bottles being taken into the stand. Now, it is clear, I think the Court has made it clear to you, that under the law if the defendant is exercising ordinary care in the management of its premises, and if it is providing a reasonably safe place in and around the grandstand for its patrons, it is not guilty of negligence.''

"If you should find that the premises are not maintained or were not maintained in a reasonably safe condition, in view of all of the evidence on the subject as you have heard, and if you believe that in the exercise of ordinary care and prudence to provide a safe place for the patrons, a reasonably safe place, it would be necessary for the defendant to discontinue the practice of selling beer in bottles to be taken into the stand, you would have a right to find that the continuance of that practice was negligence.''

We believe, from a reading of the foregoing instructions, the jury was not misled by any inadvertent or inapt expression of the trial court upon defendant's duty of care, nor do we believe there is any merit in defendant's conten-

tion that the instructions assumed facts and implied negligence, the trial court having stated to the jury:

"Then in anything that I may say as to the fall that Mrs. Martin is alleged to have sustained, the jurors will understand that I am *not assuming* that she fell, or that the proof will show that she fell, but only assuming that the proof may show that." (Italics added.)

"Nothing that the Court may say is to be understood as conveying any intimation as to how any question of fact should be decided, or what has been proved or not proved."

"The fact that I have assumed certain hypothetical factual situations, does not mean that I am intimating that any set of facts has been proved, or has not been proved."

■ There is also no merit in the objection urged in paragraph (b) of defendant's fourth proposition.

The trial court said this to the jury:

"There are no set rules you and I can follow in weighing the testimony of witnesses; it is a matter of judgment."

The trial court, however, further instructed the jury thus:

"The burden of proof is upon the plaintiff to show facts constituting negligence, and that the acts or conditions which are alleged to have been negligent proximately caused her injuries."

"The burden of proof is upon the plaintiff to show defendant's negligence, that it was the proximate cause of the accident."

"Duty is upon the plaintiff, as I told you, to prove negligence."

"You know you are the exclusive judges of the credibility of witnesses, and the weight of the evidence; but you have no arbitrary power. The authority you have is a very great authority, because your decision on the facts as a rule is binding on the judge as a practical proposition. In determining the credibility of a witness, you should not do so from hastily gained impressions, but only after comparing the testimony of the witnesses with all the evidence which is corroborative of it and all that is opposed to it. You will find that often times you will not be able to determine whether a witness has told the truth, and the entire truth, until you have had an opportunity to consider all the evidence in the case, bearing upon the same points. You know that ordinarily the interest of a witness in the outcome of a lawsuit

is an important consideration for you to bear in your minds
—the appearance of a witness on the witness stand, his
apparent willingness to tell fully and frankly everything
he knows; or on the other hand to color his testimony; but
you have the right to bring to bear your own judgment and
your experience whatever it may be in determining whether
a witness has told the truth or all the truth. There are no
set rules you and I can follow in weighing the testimony of
witnesses. It is a matter of judgment.''

''You know, I am sure, that the preponderance of the evi-
dence means not a greater number of witnesses, but the
greater weight of testimony, testimony which, or the evidence
which, when compared with the evidence opposed to it, is
more convincing to your minds, carries greater conviction.''

■ It is further urged that the trial court erred in in-
structing the jury thus:

''Oral evidence, evidence of oral statements of a party
against his interest, or admissions, are to be viewed by you
with caution.''

Such instruction was proper. (See sec. 2061, subd. 4, Code
Civ. Proc.)

■ Again the trial court gave the following instruction:
''Opinion evidence has been given here by doctors. That
sort of evidence is permitted in a case of this sort, people
who are especially skilled in the professions and especially
learned are allowed to give opinions, and those opinions are
to be considered as evidence. You have not any right to
arbitrarily disregard them. Of course, if you think they
are unreasonable and not worthy of credence, you are not
obliged to follow them. You haven't any right to reject the
testimony of any witness unless you have some reason to
believe that the credibility of the witness has been to some
extent impeached. That is, your right to judge of the credi-
bility of witnesses is limited; it is not arbitrary, as I said
before.''

The foregoing was a correct instruction. (*Haight* v. *Val-
let*, 89 Cal. 245 [26 Pac. 897, 23 Am. St. Rep. 465] ; *Rosander*
v. *Market Street Ry. Co.*, 89 Cal. App. 710, 718 [265 Pac.
536].)

■ There is likewise no merit in the objection urged in
paragraph (c) of defendant's fourth proposition. The trial
court instructed the jury as follows:

"In discussing the law, the Court has to discuss the law of the entire case, and unless you find there was negligence on the part of the defendant and no negligence on the part of Mrs. Martin, that proximately contributed to the accident, you will have no occasion to consider the matter of damages at all."

"If the bottle was negligently left there and Mrs. Martin stepped on it, the negligence of leaving it there would be proximate to that accident; and if Mrs. Martin was negligent in stepping on the bottle when she should have seen it and avoided it, of course, her negligence is proximate to the accident. So that there is no use discussing at length the doctrine of proximate cause."

The trial court also instructed the jury:

"It is simply as I say, a plea that the plaintiff was negligent in some respect that contributed proximately in some degree to the happening of the accident, and it is established if plaintiff's negligence contributed directly and proximately to the happening of the accident in any degree, even though it may be a slight degree."

"The burden of proof is upon the plaintiff to show defendant's negligence, that it was the proximate cause of the accident."

The foregoing instructions are full and accurate statements of the principles of law embodied therein.

Defendant's fifth proposition does not find support in the record. An examination of the instructions requested by defendant and refused by the trial court discloses that in all particulars regarding which defendant complains the court gave instructions covering the subjects requested by defendant; for example, the trial court instructed the jury on unavoidable accident as follows:

"There is such a thing as an unavoidable accident, in a legal sense there is . . . If you believe that ordinary care was used by the defendant to keep the premises in a reasonably safe condition, there would be no negligence on the part of the defendant; and if you believe that Mrs. Martin stepped on this beer bottle without any negligence on her part, her accident did not give rise to any claim of liability on the part of the Turf Club. It would be one of those things that happens where neither party is negligent, and in a legal sense, it would be an unavoidable accident." On disregarding

sympathy, prejudice, and bias the court instructed the jury thus:

"It is your duty as you know to decide this case strictly upon the evidence and law stated to you by the Court, without any feeling of sympathy, or prejudice or bias."

It is unnecessary for us to discuss the errors urged by defendant in its final proposition, for the reason that the rule is established that a judgment will not be reversed for insufficiency of the evidence or defects in counts of a complaint, if the judgment is sustained by one count of the complaint, as in the present case, it being conceded that the first count states a cause of action, which count in turn is supported by substantial evidence. (*Kains* v. *First Nat. Bank of Pomona*, 30 Cal. App. (2d) 447, 451 [86 Pac. (2d) 935].)

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1940.