[Civ. No. 573. Fifth Dist. Dec. 15, 1966.]

JAMES A. McSHANE et al., Plaintiffs and Appellants, v. BARBARA LUCILLE CLEAVER et al., Defendants and Respondents.

James A. McShane and Lillian L. McShane, in pro. per., and Michael F. Dillon for Plaintiffs and Appellants.

Bledsoe, Smith, Cathcart, Johnson & Rogers, Stutsman, Nagel, Ferrari & Cole and Robert A. Seligson, for Defendants and Respondents.

McMURRAY, J. pro tem.[*]—This is an appeal from a judgment entered upon a jury verdict against plaintiffs, after an eight-day trial. The action was one seeking damages arising from an automobile collision in the State of Texas.

The facts, viewed most favorably to respondents, reveal that appellants were west of Childress, Texas, traveling easterly at about 12:30 p.m. on July 18, 1963, at 55 to 60 miles per hour, when they noticed respondents' automobile traveling westerly on the same two-lane highway, some 40 to 100 yards ahead. Respondent Barbara L. Cleaver was driving the vehicle at the time of the accident. Her husband had driven from about 7:30 a.m. until 10 a.m., when she began to drive. They had both slept about seven hours the night before. She had passed through Childress, Texas, and had stopped for the signal lights there. The automobile she was driving was equipped with almost new tires, and an air-conditioner was operating at the time. There had been nothing unusual about the operation of the car until about five miles west of Childress, when she heard a loud noise like a gunshot. The hood bounced up and down and the steering wheel spun to the left, pulling the car across the highway in spite of her efforts to keep it to the right or pull it back to the right side of the road. The collision occurred on appellants' side of the road.

Respondent Barbara Cleaver told appellants she had a blow-out and told Officer Dowdy of the Texas Highway Patrol about

---

[*]Assigned by the Chairman of the Judicial Council.

the explosion and noise; she denied that she fell asleep. Officer Dowdy testified to a light scuff mark he observed on the road leading to the point of impact. He testified that Barbara Cleaver told him of the explosion and uncontrollable veering of the car. Dowdy stated that when he talked to appellants at the hospital, appellant James A. McShane said respondents' car swerved across the road as if it had a blowout, stating that she must have had a blowout. Officer Dowdy found the left front tire of respondents' car was flat and had a big slash in it some eight or nine inches long.

Expert testimony was introduced by both sides concerning the tire. A Mr. Stringfield testified for respondents, that he had examined the tire and found it in good condition except for a major tear in the sidewall and a cut $2\frac{1}{4}$ inches long located above the major tear. He stated his opinion that the smaller cut was made when the tire was inflated, and was caused when the tire struck some ragged object in the road, that the cut penetrated through the tire and was such as to allow the air to escape rapidly with a noise. It was his opinion that the smaller cut was made before the larger one, the latter bearing evidence of sideswiping where the smaller one did not.

Appellants' expert, Mr. Schlintz, concluded that there was not a blow-out preceding the collision; he attributed the cuts to the collision and asserted that the most likely cause was the bent bumper of respondents' car. He agreed with Stringfield about the general condition of the tire and, on cross-examination, acknowledged that it was possible that the tire blew out before the accident.

Appellants both testified that there was no blowout, stating that respondents' car did not appear to be out of control, that the driver appeared slumped over in the front seat prior to the accident. Their credibility was probably somewhat impaired by testimony that they suffered $14,000 in personal property loss caused by a fire which followed the collision, and by the opinion of doctors, including their own treating physician, that their numerous complaints of medical problems were unsubstantiated.

Appellants here assign as reversible error erroneous instructions, misconduct by the court and counsel, errors allowing improper cross-examination, improper use of expert testimony, false testimony, and failure to grant a new trial.

■ One of the errors alleged by appellants is that the trial court erred in instructing the jury before counsel's opening statement, in violation of the mandate in Code of Civil Pro-

cedure section 607, which provides that the jury should be charged at the end of the trial unless for some special reason the court otherwise directs. No objection was raised by either counsel at the time of trial, and the preliminary statements of the law as given by the trial judge appear to be reasonable and proper, being mainly those instructions regarding the duties of the judge and the jury, types of evidence, the effect of rulings, methods of judging witnesses, and the issues to be determined. After giving these first instructions, the court invited counsel to comment upon any of the instructions and, in fact, invited any objection that either counsel might have.

In *Martin* v. *Los Angeles Turf Club, Inc.*, 39 Cal.App.2d 338 [103 P.2d 188], at page 342, the trial court proposed the giving of preliminary instructions, and both counsel specifically waived any objections. Later the court indicated it would give some further instructions before closing argument if there was no objection. None was made, and the appellate court refused to review the propriety of the court's action in this respect. In *Westover* v. *City of Los Angeles*, 20 Cal.2d 635 [128 P.2d 350], at page 639, the trial court gave instructions before the commencement of the trial, in accordance with the suggestion made by the plaintiff. On appeal, the Supreme Court found a waiver of any objection where counsel for defendant city said "the city . . . has no objection to your honor stating at the present time the law as to the case to be applied by the jury." The court also said: "The court stated in general terms certain principles of law for the guidance of the jury, illustrating such principles with hypothetical examples, and inviting counsel to challenge any such examples if they were in disagreement therewith. . . . Other details of this preliminary statement to the jury need not be mentioned. Considered with the great number of detailed instructions given at the close of the case, it served only to guide the jury in the proper discharge of its functions as trier of the facts."

Here, there was no specific waiver, as in both *Martin* and *Westover*, but the record does reveal a silent acquiescence by both trial counsel.

Appellants urge that the failure of the court to repeat certain instructions was error, but this ignores the rule, set forth in *Westover* v. *City of Los Angeles, supra*, that the instructions are to be viewed as a whole, even where such instructions are given at various times throughout the trial. Appellants' position is further weakened by the fact that the urged failure to repeat instructions is based upon instructions

which they never requested. They should not now be heard to complain that an unrequested instruction must be repeated at the close of the trial where the court had given it on its own motion at an earlier time. (See *Blair* v. *Williams,* 109 Cal.App. 2d 516, 519 [240 P.2d 1043]; *Barrera* v. *De La Torre,* 48 Cal.2d 166, 170 [308 P.2d 724].) It would be of little value to constantly reiterate instructions throughout an entire trial, and this court should assume that the jury properly discharged its duty and applied all of the instructions which were given.

█ Appellants complain that by instructing on contributory negligence at the commencement of the trial, the trial judge committed error since during the trial no evidence of contributory negligence was adduced. The evil of appellants' position is that both the pleadings and pretrial statements of both parties indicated that contributory negligence was an issue in this case. The court, in its final instructions to the jury and prior to closing argument, properly instructed the jury that contributory negligence was not an issue to be determined by them and that they were not to consider contributory negligence as an issue in the action. Reading the instructions as a whole, and presuming that the jury followed those instructions, any error appears to have been cured. (See 2 Witkin, Cal. Procedure (1954) Trial, § 71, p. 1801; 3 Witkin, Cal. Procedure (1954) Appeal, § 105, p. 2279.)

█ By a somewhat elaborate interpretation, appellants urge that an instruction required them to prove the cause of respondents' negligence. The instruction as given read: "In this action, the Plaintiffs have the burden of proving the following issues: Negligence of Defendants, Proximate cause of this negligence, if any, to Plaintiffs' injuries, and the nature and extent of said injuries and damages."

Appellants seek to ignore the fact that the words "if any, to Plaintiffs' injuries," should modify the entire statement which precedes them, and say that the jury was instructed to find the proximate cause of the negligence. Such arguments are unimpressive, particularly when it is remembered that "If they harmonize as a whole and fairly and accurately state the law, a reversal may not be had because of verbal inaccuracies, or because a separate instruction does not contain all of the elements which are to be gathered from the instructions as a whole." (*Westover* v. *City of Los Angeles, supra,* 20 Cal.2d at p. 637.) Considering this instruction with other instructions given, particularly as related to the correct instruction given

at the commencement of the trial, there is no merit in appellants' position.

■ Appellants further urge that there was material conflict between the general instructions given on the issues and on the burden of proof. When these are viewed together with the instruction given on res ipsa loquitur as a matter of law, they argue that the jury was misled, to their prejudice, since the jury did not know which party had the burden of proof. This argument is somewhat similar to that in *Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 502 [15 Cal.Rptr. 161, 364 P.2d 337], where the defendant argued that the same res ipsa loquitur instruction shifted the burden of proof. The Supreme Court rejected this argument, pointing out that the instruction does not require the defendant to prove non-negligence, but only requires a rebuttal of the inference, plaintiff still having the over-all burden of proof. This is consistent with the view that the doctrine of res ipsa loquitur is only a rule of circumstantial evidence and, if it is overcome, the plaintiff still has the burden of proof on the ultimate issue of negligence. These instructions are not in conflict when it is realized that their applicability depends upon a prior finding of a fact by the jury before they become operative.

The trial court omitted from BAJI instruction No. 1 the portion which cautioned the jury that their authority to determine the facts and weigh evidence was not an arbitrary power, and must be exercised with sincere judgment, sound discretion, and according to law. Code of Civil Procedure section 2061, subdivision 1, requires that the jury be so instructed, and the failure to include this part of the instruction is urged as error. Appellants did not object to this instruction, but this is of no moment since they are deemed to have excepted to any improper charge given the jury by the court. (Code Civ. Proc., § 647; *Barrera* v. *De La Torre, supra,* 48 Cal.2d at p. 170.)

■ However, the court did tell the jury they were bound to follow the law as given, that they were not to decide out of passion, prejudice or sympathy for anyone, and only after consultation and deliberation about the evidence with each other. This most assuredly did instruct the jury that their power was not arbitrary, and that they were required to act with sincere judgment, with sound discretion, and according to law, although those words were not expressly used by the trial judge. It appears that any error was not of such nature as to require reversal, since it does not appear that a different result would otherwise have been reached. (See *People* v. *At-*

*wood*, 223 Cal.App.2d 316, 335 [35 Cal.Rptr. 831]; *People* v. *Tucker*, 28 Cal.App.2d 206 [82 P.2d 73].)

The trial judge also omitted certain language defining presumptions and inferences which appear in BAJI instructions numbered 22 and 24. ■ Appellants made no request for such instructions and, although they may object to incorrect instructions, they may not object where they failed to offer any instruction on the subject. (*Barrera* v. *De La Torre, supra.*)

Viewing the instructions as applicable to the evidence before the court, the only place where the omitted language would be relevant is in regard to the instruction on res ipsa loquitur. That instruction contained, however, a definition of an inference as a form of evidence, and sets forth how it may be overcome.

■ The trial judge also omitted a portion of BAJI instruction No. 33(C), relating to hypothetical questions. That instruction reads: "In permitting such a question, the court does not rule, and does not necessarily find in its own mind that all the assumed facts have been proved."

The court omitted the words, "and does not necessarily find in its own mind." This omission in no way affects the validity of the instruction, as the omitted material is merely repetitive of the phrase immediately preceding it.

Appellants also argue that by using the phrase, "if the plaintiffs were injured," instead of "a plaintiff who was injured," the judge instilled in the jury a feeling that he entertained some doubt as to appellants being injured by respondents' negligence. The argument is specious, since it relies upon an over-refined interpretation of particular words in an instruction, rather than upon the tenor and intent of the instructions as a whole. In any event, appellants requested the instruction as given, and cannot now be heard to complain of that instruction.

■ Appellants contend the evidence did not support the giving of an instruction on imminent peril. This doctrine applies where a nonnegligent person is confronted with a situation of imminent danger to himself or to others, in which case he is not required to exercise the same standard of care otherwise required. (*Leo* v. *Dunham*, 41 Cal.2d 712, 714 [264 P.2d 1].) Appellants argue that respondent Barbara Cleaver did not perceive the danger and did not have alternative courses of action. They cite *Staggs* v. *Atchison, Topeka & S. F. Ry. Co.*, 135 Cal.App.2d 492 [287 P.2d 817]; *Smith* v. *Johe*, 154

Cal.App.2d 508, 511 [316 P.2d 688]. However, the jury might have found that respondent Barbara Cleaver was aware of oncoming traffic before the accident, that there was evidence she did not apply her brakes but instead tried to steer her vehicle to the right rather than allowing it to go to the left. The jury could have found that she was confronted with a dangerous situation, and that her action in attempting to pull her car to the right instead of applying the brakes was still a standard of care which was reasonable under her perilous situation. The question was certainly one of fact, and was properly left to the jury. (*Leo* v. *Dunham, supra*; *Warren* v. *Sullivan,* 188 Cal.App.2d 150, 154 [10 Cal.Rptr. 340]; *Persike* v. *Gray,* 215 Cal.App.2d 816 [30 Cal.Rptr. 603].)

 Appellants argue that by giving the instruction on res ipsa loquitur as a matter of law the imminent peril instruction was erroneous as being in absolute conflict with the other instruction. This is not so; the jury could well have found the inference of res ipsa loquitur was overcome by respondents' showing of a blowout, and the jury then would be confronted with determining whether or not respondent Barbara Cleaver was negligent in the manner in which she attempted to control her vehicle.

 Appellants urge that the trial judge was guilty of misconduct. One of the cited incidents is based upon a remark made by the court relative to the BAJI instructions, where he said: "We're wedded to this book. This book has instructions in it that when used at least you have a lesser chance of being appealed successfully than if you make one up yourself. All they are is a bunch of instructions that the judges themselves have gotten together, in this case judges in Los Angeles. I'll read the instruction which is applicable to depositions."

Somehow or other appellants seem to feel that this casual comment by the trial judge prejudiced them in the eyes of the jurors, or that perhaps this was some sort of belittling of the instructions contained in BAJI. It is difficult to see how any prejudice could result from such comment. It is generally acknowledged by attorneys and judges who deal with the trial of cases that the BAJI instructions are extremely useful, however they are not so sacrosanct as to be immune from a somewhat light reference to them.

 Appellants cite as misconduct some remarks by the trial judge to the effect that the jurors should tell their families they might be late in getting home, that at times jurors have been kept until after 12 midnight. This remark, appel-

lants contend, was a coercing of the jury into a hasty verdict. The only thing wrong with this position is that the remark was made the day before the jury was instructed, and appears to be nothing more than a courteous caution by the court to the jurors that they should advise their families they might be late. After deliberating about an hour, the jury returned to the courtroom at 3 p.m. on the day following the above remark. This is not the type of misconduct shown in *Cook* v. *Los Angeles Ry. Corp.*, 13 Cal.2d 591 [91 P.2d 118], where the court gave the jury only 10 additional minutes to deliberate.

Appellants also complain that they were prejudiced by cross-examination of appellants relative to a novel which James McShane was attempting to have published. The cross-examination attempted to bring out that the novel was a satire on government. There were no objections made to these questions. The cross-examination, while not particularly telling, was apparently directed at showing that nonpublication might be attributed to the fact that the novel was satiric, and not particularly attractive, rather than the fact that the nonpublication of the novel could be attributed to the effects of the accident. The questions could be relevant to the issue of damages, and in the absence of objection or claim of misconduct, the error, if any, will not be reviewed. (*Horn* v. *Atchison, Topeka & S. F. Ry. Co.*, 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561].)

Certain questions were asked of appellants as to whether or not James McShane had ever said he was on a blacklist at Lockheed. These questions, again, appear to have been directed to the question of damages and, since no objection was interposed to them, this court will not review such claimed misconduct. (*Horn* v. *Atchison, Topeka & S. F. Ry. Co., supra.*) It would assuredly have been better had counsel shown the basis for such questions, but in the absence of objection or any demand for such showing, the present complaint of appellants comes too late.

Appellants further argue that the court erred in allowing the expert, Stringfield, to give his opinion as to whether the tire was deflated before the impact, stating that by testifying that in his opinion the tire struck some object in the road which made the cut above the major tear, the expert invaded the province of the jury, going to an ultimate issue. This complaint does not appear to be well founded, in view of *Wells Truckways, Ltd.* v. *Cebrian*, 122 Cal.App.2d 666, 674 [265 P.2d 557] ; *Magee* v. *Wyeth Laboratories, Inc.*, 214 Cal.

App.2d 340, 357-358 [29 Cal.Rptr. 322] ; *La Mere* v. *Goren,* 233 Cal.App.2d 799, 806-807 [43 Cal.Rptr. 898]. The fact that appellants' expert also testified to substantially the same thing on cross-examination deprives this argument of appellants of any validity.

 Appellants complain that the court erred in failing to grant a new trial. This argument is founded upon intemperate and vituperative statements contained in appellants' declaration in support of their motion for new trial, alleging that respondent Barbara Cleaver was guilty of perjury, that Officer Dowdy was not, in fact, the officer who investigated the accident in Texas, but was an imposter, and in any event that if Officer Dowdy was the same person who investigated the accident, he, too, was a perjurer. Such arguments, particularly when presented with the venom which is shown in appellants' declaration, have no validity in an appellate court, and very little validity in a trial court. Intemperate and violent statements are not usually persuasive. In justice to plaintiffs' counsel on appeal, it should be noted that he did not become attorney of record until July 12, 1965, which was after the trial and the filing of the declaration on motion for a new trial. A reading of the entire record convinces us that the jury disbelieved appellants and believed respondents. The instructions given to the jury were reasonably accurate, and no reversible error appears.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied January 12, 1967, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1967.