Filed 5/24/13  Novak v. Continental Tire CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAULA NOVAK,<br>as Special Administrator, etc.,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>CONTINENTAL TIRE<br>NORTH AMERICA, INC., et al.,<br><br>      Defendants and Respondents. | A133073<br><br>(Alameda County<br>Super. Ct. No. HG07344892) |

This appeal follows a defense verdict in a case brought by a passenger in a vehicle who sustained serious injuries after a tire blowout and collision. The passenger, Alex Novak, brought an action against the tire manufacturer and the mechanic who had previously serviced the vehicle. Novak stated causes of action for strict product liability and negligence against the tire manufacturer for failing to provide a warning that tires degrade with age and should be replaced after about six years even if the tire shows good tread depth. Novak sued the mechanic for negligence in failing to warn about the danger of old tires when rotating the tires and performing other maintenance on the vehicle.

Following pretrial evidentiary rulings that excluded some of Novak's evidence, the court granted the tire manufacturer's motion for a nonsuit on the strict liability cause of action and the jury returned a defense verdict for both the manufacturer and the mechanic on the negligence cause of action. Plaintiff appeals, contending that he was prejudiced by both evidentiary and instructional errors. We agree that the court

1

prejudicially erred in excluding relevant and admissible evidence and in refusing a jury instruction necessary to the jury's fair consideration of the case, and shall therefore reverse the judgment.

## STATEMENT OF FACTS

On September 12, 2005, Milagros Ibarra was driving her 1988 Chevrolet van upon a residential street in Fremont with her friend Alex Novak as a passenger in the front seat when the van's right rear tire blew out. The van veered sharply to the right and hit a telephone pole, crushing the front passenger side of the van. Novak suffered two broken legs, a punctured lung and other serious injuries. At the time of the accident, Ibarra was 78 years old and Novak was 81 years old.

The tire on Ibarra's car was manufactured in 1993; it was 12 years old at the time of the accident. All tires bear an alphanumeric code on the sidewall identifying the week and year of manufacture. (49 C.F.R. § 574.5(d) (2005).)

## PROCEDURAL HISTORY

Novak sued the tire manufacturer, Continental Tire North American, Inc. (Continental), and the owner of the automotive repair facility that serviced Ibarra's van, Chi Tai.[1] Novak claimed both defendants should have warned Ibarra that tires degrade with age and are in danger of rupturing even with good tread depth.

Trial proceeded on Novak's causes of action for strict liability against Continental and negligence against Continental and Tai. The court granted nonsuit on the strict liability claim, and the jury returned a defense verdict on the negligence claims. Novak's motion for a new trial was denied. The court entered judgment for defendants and awarded them costs of suit. This appeal timely followed.

Novak died during pendency of the appeal and his daughter, acting as special administrator of his estate, has been substituted as plaintiff.

---

[1] Ibarra also sued Continental and Tai but reached a pretrial settlement of her claims.

2

# DISCUSSION

"Strict liability has been imposed for three types of product defects: manufacturing defects, design defects, and ' "warning defects." ' [Citation.] The third category describes 'products that are dangerous because they lack adequate warnings or instructions.' " (*O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347.) " 'Generally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products. [Citation.] The requirement's purpose is to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product altogether or evade the danger by careful use. [Citation.] Typically, under California law, we hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product.' " (*Id.* at p. 351.)

Liability for negligence may also be imposed for a manufacturer's failure to warn of product dangers. "Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." (*Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 1002.)

As for the claim against the mechanic, Tai, "a repair shop or service station operator is under a duty to exercise ordinary care and skill in repairing motor vehicles." (38 Am.Jur.2d (2013) Garages, § 59.) An automobile repair person may be held liable in negligence for "damages proximately resulting from the negligent or unskillful manner in which one makes repairs or performs services." (*Id.*, § 53, fn. omitted.)

I. *The trial court erred in excluding automobile owner manuals recommending replacement of tires after five to ten years of service and in precluding plaintiff's expert witnesses from relating statements in the manuals and trade publications to support the opinion that the danger of old tires was known or reasonably knowable in the automotive industry.*

The court granted nonsuit on the strict liability cause of action against Continental on the ground that plaintiff failed to present sufficient evidence that Continental knew or should have known of the potential danger that an old tire will rupture. Any deficiency in this respect was caused by the erroneous exclusion of evidence tending to prove that Continental should have been aware of this danger.

Plaintiff sought to introduce, as exhibits, trade publications and automobile owner manuals advising that tires should be replaced after five to ten years, regardless of tread depth, because rubber degrades with age. Plaintiff also sought to have experts testify that they relied on these advisements in forming the opinion that defendants should have known of the danger posed by old tires. Continental filed a motion in limine to exclude the documents as irrelevant, lacking foundation and more prejudicial than probative. Tai joined in the motion. The court granted the motion, finding that the documents were inadmissible hearsay and, secondarily, that the manuals lacked authentication. The court also precluded plaintiff's experts from relating statements contained in the documents. As we explain below, portions of the manuals advising tire replacement after a certain number of years were admissible to show industry practice for tire replacement and what Continental knew or should have known about the potential danger of old tires. The remaining portions of the manuals and trade publications concluding that old tires are dangerous was inadmissible hearsay but plaintiff's experts should have been permitted to recite those findings in support of their opinions.

The proffered materials included a 1986 study conducted by the German Motor Vehicle Inspection Association (known as DEKRA, a German acronym). (*Dekra* <http://en.wikipedia.org/wiki/Dekra> [as of April 1, 2013].) DEKRA studied tire failures and noted "a dramatic increase in tires that are older than six years. In this instance, tire aging and the embrittlement of the rubber is prominent. [¶] Based on the data gathered

4

here it is recommended that, in terms of tire age, tires that are older than six years should be replaced even if the tread profile is still sufficient." A 1987 rubber trade publication found that tire "failure frequency climbs disproportionately fast with increasing tire age. Based on the data we gathered, the probability of a breakdown due to tire damage is eight times as high with a nine-year-old tire than with a two-year-old tire—but this is a known fact among experts in the field." Plaintiff also proffered numerous automobile owner manuals, including a 1987 Porsche owner manual that states: "The supposition that tire durability and performance are immune to the effects of storage and age is unfounded. Chemical additives which make the rubber elastic lose their effectiveness in the course of time and the rubber becomes brittle and cracks. . . . [¶] Under no circumstances should tires older than 6 years be used on your Porsche."

The trial court excluded these documents from evidence and precluded plaintiffs' experts from relaying to the jury the statements contained in them. Plaintiff's engineering expert opined that rubber degrades with age and that the tire in this case ruptured because it was old. In relying upon the DEKRA study, the expert was allowed to testify only that the study compiled statistics on 146 tires that showed a high failure rate at ages seven and eight years and that the expert found the study "supportive" of his opinion. The expert was not permitted to refer to the study's finding that older tires showed "embrittlement of the rubber" or the study's recommendation that tires "older than six years should be replaced even if the tread profile is still sufficient." Concerning the automobile owner manuals, the expert was permitted only to list them among the many materials he relied upon in forming his opinion and to state that the documents he consulted did not "cause [him] to doubt [his] conclusions regarding the cause of failure in the subject tire." The court's exclusionary order was too broad.

"It is often said that a trial court's ruling on the admissibility of evidence is vested in that court's discretion and will not be disturbed on appeal unless that discretion was abused." (*People v. Franzen* (2012) 210 Cal.App.4th 1193, 1205.) However, "[a]ny legal ruling involves three components: the law, the facts, and the application of the law to the facts." (*Ibid.*) "A trial court usually has the preeminent power to determine matters of

5

fact—including, at least provisionally, any 'preliminary fact' on which an evidentiary ruling may depend" but "its determination as to the governing legal principles [citation] is subject to independent appellate review." (*Ibid.*) "Thus insofar as the trial court expressly or impliedly determined the historical facts bearing on admissibility, its ruling must be upheld so long as it is supported by substantial evidence. But insofar as the court selected and applied the governing legal principles . . . its ruling is subject to independent review." (*Ibid.*)

### A. Authentication

Plaintiff offered to prove authentication of the automobile owner manuals with the testimony of automobile owners who received the manuals, automobile dealers who provided the manuals, and others who obtained the manuals from dealers or other reputable sources. The court questioned the sufficiency of the proffered authentication evidence, suggesting that a proper foundation required testimony from the manuals' authors. The court said authentication was not established "[u]nless you have somebody [who] can talk about how, when and why" the auto manufacturers issued advisements about tire replacement in their manuals. This is the position taken by defendants on appeal. Continental argues that authentication was lacking because plaintiff "offered no witnesses who could be cross-examined by the defendants regarding the basis for the information or recommendations contained in any manual." Continental overstates the requirements for authentication of a writing.

A written document must be shown to be authentic before it may be admitted in evidence. (Evid. Code, § 1401; *Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1418.) "[A] document is authenticated when sufficient evidence has been produced to sustain a finding that the document is what it purports to be ([Evid. Code,] § 1400). As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321.)

Authentication of a writing does not require the author's testimony. A written document is authenticated if there is sufficient evidence that the document is "what it purports to be." (*Jazayeri v. Mao, supra,* 174 Cal.App.4th at p. 321.) Authentication of a writing can be provided by a variety of means; even its contents may be sufficient proof the document is genuine. (*Ibid.*) In this case, plaintiff proffered sufficient authentication by offering testimony to establish that the manuals were, in fact, genuine manuals distributed by automobile manufacturers to customers buying vehicles. Plaintiff was not required to obtain the testimony of the individuals who wrote the manuals.

*B. Hearsay and Expert Witness Testimony*

The hearsay rule was also improperly applied to bar the admission of the automobile manuals for the limited purpose for which they were offered—notice and industry practice—and to preclude the expert witnesses from referring to the content of the manuals and trade publications to support their opinions

Out of court statements are hearsay only when "offered to prove the truth of the matter stated." (Evid. Code, § 1200.) Statements in the Porsche and other product manuals that rubber degrades with age, if offered to prove the truth of those statements, were properly excluded as hearsay. However, plaintiff offered to limit use of the manuals to proving defendants had notice of the potential danger posed by old tires rather than proving that old tires are, in fact, dangerous. The warning contained in the Porsche manual that "Under no circumstances should tires older than 6 years be used on your Porsche" and similar manufacturer advisements were not offered to prove the truth of the statements but to prove that the risks were well known within the industry and should have been known by the defendants. Manufacturer publications like product manuals and brochures may be admitted to prove notice. (See *Fraijo v. Hartland Hospital* (1979) 99 Cal.App.3d 331, 344-345 [warning in drug brochure admissible to show knowledge by medical personnel charged with malpractice].)

Notice was directly relevant to the litigated claims. An element of the strict liability cause of action against Continental was that the tire had potential risks that were *known or knowable* in light of the *scientific knowledge that was generally accepted* in the

scientific community at the time of sale and that Continental failed to adequately warn consumers of the potential risks. (CACI No. 1205.) Indeed, the basis upon which the court granted the nonsuit motion was that this element had not been established. Warnings against the use of old tires in multiple automobile manuals is evidence that the risks were known or knowable by Continental when it sold its tire. Similarly, the negligence claim against Continental required proof that defendant "*knew or reasonably should have known* that the [tire] *was dangerous or was likely to be dangerous* when used in a reasonably foreseeable manner" and that defendant "failed to adequately warn of the danger or instruct on the safe use of the [tire]." (CACI No. 1222, italics added.) " 'Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about.' " (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1305.) Evidence of automobile manufacturers' recommendations for tire replacement was admissible to prove that a reasonably prudent tire manufacturer would have known about and warned against the use of old tires.

The manuals were also admissible to prove accepted custom and practices in the automobile industry concerning tire replacement, which was relevant to the negligence claim against the automotive repair shop operator. Plaintiff needed to prove that Tai breached a duty of care in failing to advise the van's owner to replace an old tire when Tai serviced Ibarra's van in 2004 and 2005. (CACI No. 401.) Tai admitted knowing that a tire's year of manufacture is encoded on the sidewall. Customs or practices in the community are properly considered in deciding whether Tai breached a duty of care. (*Burke v. John E. Marshall, Inc.* (1940) 42 Cal.App.2d 195, 203-204; CACI Nos. 401, 413.) The tendered product manuals for five different makes of automobiles from 1987 to 2005 recommending tire replacement for older tires contained relevant evidence of community custom and practice, as well as evidence of notice, and were wrongly excluded by the trial court.

8

The court also erred in precluding plaintiff's experts from testifying that their opinion that that the danger of an older tire rupturing was known or should have been known by Continental was based in part on warnings to that effect contained in both trade publications and automobile owner manuals. An expert may base opinion testimony on any matter, "whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject . . . . " (Evid. Code, § 801, subd. (b).) An expert may also tell the jury the matters he or she relied upon in forming an opinion (Evid. Code, § 802), although the expert "may not testify as to the *details* of such matters if they are otherwise inadmissible" (*Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 788-789, italics added). An expert is not permitted to read third party "reports or documents to which he referred or relate their contents in specific detail" (*id.* at p. 789) but is permitted to relate sufficient information from third party materials to show that the materials provide a basis for his or her opinion. For example, an expert may describe the nature of consumer complaints about a product and read portions of those complaints in supporting the opinion that the manufacturer had notice of product dangers. (*West v. Johnson & Johnson Prods., Inc.* (1985) 174 Cal.App.3rd 831, 859-862.) In *Grimshaw v. Ford Motor Co., supra,* at pages 788-789, a product liability case, the court held that an expert was properly permitted to recite statements from industry literature and reports to support his opinion that an alternative product design was safe and feasible. In *Jones v. John Crane, Inc.* (2005) 132 Cal.App.4th 990, 1004, a product liability case based on a failure to warn, an expert related statements from medical journals and other texts linking asbestos and lung cancer. This court held that the historical literature supported the expert's opinion that there was a scientifically known or knowable probability that defendant's product would increase plaintiff's risk of cancer. (*Ibid.*)

Here, the court improperly prohibited plaintiff's experts from supporting their opinion that the danger of driving on old tires was known or scientifically knowable by defendants at the relevant dates by relating the warnings and advice contained in trade publications and product manuals. Subject to a proper limiting instruction, the testimony

9

should have been received to permit the jury to consider the basis upon which the experts based their opinions. (*Kelley v. Bailey* (1961) 189 Cal.App.2d 728, 738.)

II. *The trial court erred in excluding defendant Tai's deposition testimony stating that old tires are dangerous.*

Plaintiff also correctly asserts that the trial court erred in excluding Tai's admission that he was aware of the dangerousness of driving on old tires. Tai owned Peralta Auto Center in Fremont where Ibarra had her car serviced. He also owned a Unocal 76 gas station and repair facility in San Francisco and had been in the business of repairing cars for 20 years at the time he rotated the tires on Ibarra's vehicle in 2004, a year before the accident. Plaintiff called Tai as an adverse witness and questioned him about his shop's custom and practice when inspecting tires during a tire rotation. At several points during the examination, plaintiff's counsel read from Tai's deposition transcript. Defendants' attorneys objected to a portion of the deposition testimony on the grounds that it "lacks foundation" and "calls for a hypothetical." The objection was sustained with the explanation that the deposition question "calls for expert testimony" and Tai is not an expert.

The deposition testimony, with the objections and witness statements that were excluded at trial in italics, was as follows: "Q. Assume a tire looks good in the sense there's no cracks and the tread is good. [¶] A. Yes. [¶] Q. But let's say it's been stored for six years or more in some warehouse or shop. [¶] A. Yes. [¶] Q. And then it's put on a car. [¶] A. Yes. [¶] Q. Do you have any information as to whether or not it's dangerous to use a tire that is that old even though it hasn't been driven yet? [¶] A. Usually the shop, if tire inventory about five year, they are not using [*sic*], they return it back to the manufacturer or wholesale dealers, yeah. [¶] Q. They'll return it? [¶] A. Yeah. [¶] *Q. Why is that? [¶] A. Why? [¶] Q. Yes.* [Counsel for Tai]: *I am going to object right now, getting into expert testimony and we haven't disclosed him as an expert, and you are also posing hypotheticals in this question. But go ahead.* [Counsel for Continental]: *I am going to object to this question based on his knowledge so far.* [Counsel for Tai]: *Go ahead. Do*

10

*you know why shops return tires?* [¶] *A. It's dangerous.* [¶] Q. Did you ever return any on that basis? [¶] A. Unocal. [¶] Q. You did? [¶] A. Yeah." (Italics added.)

The trial court erred in excluding this testimony. Tai's acknowledgement that automotive repair shops return a tire that is about five years old because "[i]t's dangerous" and that he had done so himself was not an improper lay opinion divorced from personal knowledge, as defendants argue. (Evid. Code, § 800.) In the first place, Tai's operation of two automobile repair facilities over a period of some 20 years qualified him to express an opinion as to common practice in the industry. (*Howard Entertainment, Inc. v. Kudlow* (2012) 208 Cal.App.4th 1102, 1119-1121.) More importantly, Tai testified that he had personally returned old tires because they are dangerous to use, which was highly relevant to show that he was aware of the danger and therefore failed to act reasonably in rotating the tires on Ibarra's van without warning her of the danger. Defendants dispute this reading of Tai's testimony, noting that Tai's Peralta Auto Center did not store tires but purchased them from a wholesaler as needed. Defendants argue that Tai was not relating personal experience but speculating about how a tire warehouse might handle unused inventory. But Peralta Auto Center was not the only automotive service facility Tai operated. Tai also operated a Unocal 76 service station, received Unocal training on tire servicing and sold Unocal tires. When asked at his deposition if he ever returned old tires as dangerous, he answered "Unocal" and then clarified that, yes, he had returned tires "on that basis." Fairly interpreted, Tai's deposition testimony reflects Tai's personal experience and awareness of the danger of driving on old tires. The excluded testimony should have been admitted, after which Tai would have had an opportunity to clarify any ambiguity.

III. *The trial court did not err in refusing a special jury instruction on negligent failure to warn.*

Novak requested a special jury instruction on a manufacturer's negligent failure to warn about a product's dangerous condition. The requested instruction was as follows: " 'A manufacturer's duty to warn is a continuous duty which lasts as long as the product is in use.' The manufacturer has a duty to issue warnings and instructions after sale 'when

11

it later learns of the dangerous propensities of the product.' " Defendants objected to the instruction, and the court refused it.

Plaintiff has not provided a clear record of the jury instructions that were given to the jury but it appears that the standard instructions were given, including CACI No. 1222 that sets out the elements of a cause of action for a manufacturer's negligent failure to warn of product dangers.[2] That instruction accurately and fully sets out the applicable legal principles and plaintiff has failed to demonstrate that the standard instruction was inadequate in any respect. Standard jury instructions are approved for use as the "official instructions for use in the state of California" after an exhaustive vetting process to ensure accuracy, comprehensiveness, and comprehensibility. (Cal. Rules of Court, rule 2.1050.) Use of these standard instructions "is strongly encouraged." (Cal. Rules of Court, rule 2.1050(e).) While unusual circumstances may warrant special instructions in substitution, or in addition, to standard jury instructions, plaintiff has failed to demonstrate any reason for which the standard instruction was inadequate in this case or why it was necessary to give the special instruction he offered, which was cobbled together from statements taken from two separate court opinions. Modification of jury instructions to include opinion excerpts should be approached with caution because an opinion excerpt, even if a correct statement of the law, "does not necessarily make a good jury instruction." (*People v. Adams* (1987) 196 Cal.App.3d 201, 204-205.) The standard jury instruction fully and fairly apprised the jury of the controlling

---

[2] CACI No. 1222 reads as follows: "[Plaintiff] claims that [defendant] was negligent by not using reasonable care to warn . . . about the [tire]'s dangerous condition or about facts that made the [tire] likely to be dangerous. To establish this claim, [plaintiff] must prove all of the following: [¶] 1. That [defendant] [manufactured] the [tire]; [¶] 2. That [defendant] knew or reasonably should have known that the [tire] was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner; [¶] 3. That [defendant] knew or reasonably should have known that users would not realize the danger; [¶] 4. That [defendant] failed to adequately warn of the danger . . . of the [tire]; [¶] 5 That a reasonable [manufacturer] under the same or similar circumstances would have warned of the danger . . . of the [tire]; [¶] 6. That [plaintiff] was harmed; and [¶] 7. That [defendant]'s failure to warn was . . . a substantial factor in causing [plaintiff]'s harm."

principles concerning a manufacturer's negligent failure to warn of product dangers and did not require augmentation with the special instruction proffered by Novak.

IV. *The court erred in refusing to instruct the jury on the sudden emergency doctrine*.

Alex Novak testified that the van he was riding in struck a telephone pole almost immediately after he heard a loud bang, which was a tire rupturing. Defendants offered the testimony of an accident reconstruction expert who opined that the van "was controllable after the tire deflated" and struck the pole because the driver veered sharply to the right when she should have steered the vehicle straight ahead and brought it to a stop with a "light brake application." The expert testified that "the tire was not a substantial cause of the vehicle colliding with the pole" and blamed the collision on the driver, Ibarra, who did "the wrong thing" in steering the van toward the curbside pole. Plaintiff argued that the tire blowout created a sudden emergency to which Ibarra reasonably reacted and requested a standard jury instruction, CACI No. 452, on the sudden emergency doctrine. The court denied the request, finding insufficient evidence to support the instruction. Plaintiff challenges the court's refusal to give the requested jury instruction.

California has long recognized the sudden emergency doctrine in negligence cases: "a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments." (*Leo v. Dunham* (1953) 41 Cal.2d 712, 714.) CACI No. 452 encapsulates the doctrine and reads: "[Plaintiff] claims that [Ibarra] was not negligent because she acted with reasonable care in an emergency situation. [Ibarra] was not negligent if [plaintiff] proves all of the following: [¶] 1. That there was a sudden and unexpected emergency situation in which someone was in actual or apparent danger of immediate injury; [¶] 2. That [Ibarra] did not cause the emergency; and [¶] 3. That [Ibarra] acted as a reasonably careful person would have acted under similar

13

circumstances, even if it appears later that a different course of action would have been safer."

The court refused to give this instruction because it found a "lack of evidence regarding how [Ibarra] felt to determine and for the jury to evaluate whether or not it fell within the parameters of [CACI No.] 452." There was no testimony from Ibarra as to her perception of the accident; she suffered from Alzheimer's disease at the time of her deposition and died before trial commenced. Defendants contend the instruction was properly refused for the reason stated by the court and that the sudden emergency doctrine is limited to situations where a party to the action reacted to an emergency. Defendants contend the doctrine does not apply where, as here, a third party's reaction to an emergency is at issue. The contention is without merit.

The sudden emergency instruction "should be given when the evidence is sufficient to support the finding of the *objective* appearance of sudden and unexpected peril." (*Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 210, italics added.) Testimony from the one confronting the claimed emergency is commonly presented but it is not the only way to prove the existence of an emergency. Here, sufficient prima facie evidence of an emergency was presented by the physical evidence of a tire blowout and the testimony of Alex Novak and an independent eyewitness who each testified to a loud bang followed seconds later by the van veering to the right and striking a telephone pole. A sudden emergency instruction should be given when there is "evidence which would permit a reasonable jury to conclude that [emergency] conditions existed." (*Damele v. Mack Trucks, Inc.* (1990) 219 Cal.App.3d 29, 37.) It is then for the jury to decide whether an emergency actually existed and, if so, whether actions taken in response to the emergency were reasonable under the circumstances. (*Ibid.*; accord *Leo v. Dunham, supra,* 41 Cal.2d at p. 715.) Evidence of a tire blowout—even when evidence on the matter is disputed—supports a sudden emergency instruction. (*McShane v. Cleaver* (1966) 247 Cal.App.2d 260, 263-264, 268-269.)

Defendants' contention that the sudden emergency doctrine applies exclusively to plaintiffs and defendants who confront emergencies, and not to third parties, is not

14

supported by law or logic. The doctrine broadly applies "where a nonnegligent *person* is confronted with a situation of imminent danger to himself or to others, in which case he is not required to exercise the same standard of care otherwise required." (*McShane v. Cleaver, supra,* 247 Cal.App.2d at p. 268, italics added.) It is true, as defendants point out, that CACI No. 452 uses the words "plaintiff" and "defendant" in setting out the doctrine,[3] but the instruction simply uses terms applicable to the most common situation; it does not set the boundaries for application of the doctrine. Where, as here, a third party's asserted negligence is a material issue in the case, the reasonableness of that person's response to a claimed emergency is also a material issue and properly considered by the jury.

V. *The evidentiary and instructional errors were prejudicial and require reversal of the judgment.*

No judgment may be reversed for "misdirection of the jury" or "improper admission or rejection of evidence" unless the error has resulted in "a miscarriage of justice." (Cal. Const., art. VI, § 13.) "Article VI, section 13 of the California Constitution requires examination of each individual case to determine whether prejudice actually occurred in light of the entire record." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.)

The prejudice here is unmistakable. After having erroneously excluded competent evidence tending to show that Continental knew or should have known of the potential danger of old tires to rupture, the court granted nonsuit on plaintiff's strict liability cause of action for failure to have presented that very evidence. The same excluded evidence—numerous user manuals and trade publications—was also highly relevant to plaintiff's cause of action for negligence, as was the excluded admission by Tai that he had previously returned to the manufacturer old tires because of their danger. And the erroneous failure to give the requested instruction on the sudden emergency doctrine

---

[3] Where "Ibarra" has been inserted in the text of CACI No. 452 quoted above, the form instruction reads "[Name of plaintiff/defendant]."

more than likely affected the jury's evaluation of the reasonableness of Ibarra's response to the tire blowout and the extent to which the defendants' actions could be considered responsible for the accident and resulting injuries. In the absence of these several errors, there is a significant likelihood that the outcome of the trial would have been different.[4] These errors prejudicially affected the verdict and thus require reversal.[5]

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Plaintiff shall recover costs incurred on appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278.)

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

_____

[4] We reject Tai's assertion, stressed at oral argument, that the errors were harmless because there was no evidence that the tire that burst was on the van when Tai serviced the vehicle. In the absence of evidence that the tires on the van were changed between the time Tai rotated the tires in July 2004 and the accident in September 2005 (much less in the month between Tai's adjustment of the steering wheel and the accident), the jury was entitled to infer that the tire on the van at the time of the accident was on the vehicle when Tai serviced it.

[5] Reversal of the judgment obviates the need to address plaintiff's claim that the court erred in awarding costs. The award of costs to defendants as the prevailing parties falls with the judgment.